UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| SHIRLEY SHERROD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-00477 (RJL) |
| | ) | |
| ANDREW BREITBART, LARRY | ) | |
| O'CONNOR, AND JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

**REPLY IN SUPPORT OF SPECIAL MOTION TO DISMISS COMPLAINT
UNDER THE DISTRICT OF COLUMBIA ANTI-SLAPP ACT OF 2010
BY DEFENDANTS ANDREW BREITBART AND LARRY O'CONNOR**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................... 1

II.    ARGUMENT ........................................................................................... 3

       A.     The District Of Columbia anti-SLAPP statute applies to this case ........................ 3

              1.     The statute was passed before this case was filed and Defendants
                     filed their motion almost immediately after it was enacted ........................ 3

              2.     The court need not determine whether the anti-SLAPP statute has
                     "retroactive effect" ........................................................................... 3

              3.     The anti-SLAPP statute is sufficiently procedural to warrant
                     retroactive  application ...................................................................... 4

       B.     The anti-SLAPP statute applies in federal court. ................................................... 8

       C.     Defendants timely filed their motion. ................................................................ 14

       D.     Sherrod's claims fall within the plain language of the statute and fail as a
              matter of law ........................................................................................... 15

III.   CONCLUSION ...................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Adventure Outdoors, Inc. v. Bloomberg,*
519 F. Supp. 2d 1258 (N.D. Ga. 2007) ...................................................................12

*AirTran Airlines, Inc. v. Plain Dealer Publishing Co.,*
66 F. Supp. 2d 1355 (N.D. Ga. 1999) ....................................................................12

*American Dental Ass'n v. Khorrami,*
2004 WL 3486525 (C.D. Cal. Jan. 26, 2004) ....................................................5, 13

*Anderson Development Co. v. Tobias,*
116 P.3d 323 (Utah 2005) .............................................................................5, 13, 15

*Bank of America, N.A. v. Griffin,*
2 A.3d 1070 (D.C. 2010) ...........................................................................6, 7, 8

*Bible & Gospel Trust v. Twinam,*
2008 WL 5216845 (D. Vt. July 18, 2008) ...............................................................11

*Bible & Gospel Trust v. Twinam,*
2008 WL 5245644 (D. Vt. Dec. 12, 2008) ...............................................................11

* *Blumenthal v. Drudge,*
2001 WL 587860 (D.D.C. Feb. 13, 2001) ....................................................4, 11, 14

*Buckley v. DIRECTV, Inc.,*
276 F. Supp. 2d 1271 (N.D. Ga. 2003) ..............................................................11, 12

*Edwards v. Lateef,*
558 A.2d 1144 (D.C. 1989) .......................................................................................6

*Gasperini v. Center for Humanities, Inc.,*
518 U.S. 415 (1996) .................................................................................................10

*Global Relief v. New York Times Co.,*
2002 WL 31045394 (N.D. Ill. Sept. 11, 2002) ........................................................11

*Godin v. Schencks,*
629 F.3d 79 (1st Cir. 2010) ........................................................................11, 12, 13

*Henry v. Lake Charles American Press, L.L.C.,*
566 F.3d 164 (5th Cir. 2009) ...................................................................................11

*Kentner v. Timothy R. Downey Ins., Inc.,*
430 F. Supp. 2d 844 (S.D. Ind. 2006) ......................................................................11

*Lacek v. Washington Hosp. Center Corp.*,
978 A.2d 1194 (D.C. 2009) ....................................................................6

*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*,
37 Cal. App. 4th 855 (1995) ................................................................16

*Metabolife International, Inc. v. Wornick*,
264 F.3d 832 (9th Cir. 2001) ...............................................................13

\* *Montgomery v. District of Columbia*,
598 A.2d 162 (D.C. 1991) .........................................................4, 6, 7, 8

\* *Newsham v. Lockheed Missiles & Space Co., Inc.*,
190 F.3d 963 (1999)................................................................... passim

*Nguyen v. County of Clark*,
732 F. Supp. 2d 1190 (W.D. Wash. 2010)..........................................5, 13

*Nixon v. District of Columbia Dep't of Employment Servs.*,
954 A.2d 1016 (D.C. 2008) ...................................................................5

*Northon v. Rule*,
637 F.3d 937 (9th Cir. 2011)) ...............................................................11

*Price v. Stossel*,
620 F.3d 992 (9th Cir. 2010) ...............................................................13

*Robertson v. Rodriguez*,
36 Cal. App. 4th 347 (1995) ............................................................5, 13

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
130 S. Ct. 1431 (2010)..........................................................................6

*Shoreline Towers Condominium Ass'n v. Gassman*,
404 Ill. App. 3d 1013 (2010) ...........................................................5, 15

*South Middlesex Opportunity Council, Inc. v. Town of Framingham*,
2008 WL 4595369 (D. Mass. Sept. 30, 2008) .......................................12

*Stern v. Doe*,
806 So. 2d 98 (La. Ct. App. 2001)........................................................16

*Stuborn Ltd. Partnership v. Bernstein*,
245 F. Supp. 2d 312 (D. Mass 2003) ....................................................12

*The Saint Consulting Group, Inc. v. Litz*,
2010 WL 2836792 (D. Mass. July 19, 2010).........................................11

*Turkowitz v. Town of Provincetown*,
    2010 WL 5583119 (D. Mass. Dec. 1, 2010)............................................................................11

*USANA Health Sciences, Inc. v. Minkow*,
    2008 WL 619287 (D. Utah March 4, 2008).......................................................................11, 14

## STATUTES AND MISCELLANEOUS AUTHORITIES

735 ILCS 110/25 ..............................................................................................................................5

Cal. Civ. Proc. Code § 425.16(c)(1) ..............................................................................................5

* D.C. Anti-SLAPP Act of 2010 ........................................................................................... passim

Fiscal Impact Statement – "Anti-SLAPP Act of 2010" ...................................................1, 4, 13, 15

RWC 4.24.510 ..................................................................................................................................5

I.      PRELIMINARY STATEMENT

Shirley Sherrod's opposition papers do not defend or even address her statements that Andrew Breitbart is "one person that I'd like to get back at" and how it would be a "great thing" if his website was shut down – the very statements that define her case as a classic SLAPP suit. Sherrod does not raise any substantive arguments that the claims asserted in the Complaint are not directly implicated by the language of the D.C. Anti-SLAPP Act of 2010.  To the contrary, she seeks damages against a journalist as a result of his commentary on a speech given by a high-ranking government official.  This is a classic SLAPP suit and precisely the situation the statute was intended to address.

Instead of responding on the merits, Sherrod contends that the statute should not be applied at all on a variety of procedural grounds.  These arguments have been asserted against anti-SLAPP statutes in other jurisdictions and have been uniformly rejected.

First, the D.C. Anti-SLAPP Act applies to cases pending upon its enactment.  The statute was designed to have "a beneficial impact *on current* and potential *SLAPP defendants.*"[1]  Courts in every jurisdiction that have addressed this issue have uniformly held that anti-SLAPP statutes are retroactive and apply to cases that were filed before the statute went into effect.  Sherrod does not cite any cases to the contrary.  Moreover, the statute was passed *before* this case was filed and became effective before Defendants filed any responsive pleadings.  Sherrod cannot claim any prejudice or that the statute was not intended to apply to pending cases, like her own.

Second, the D.C. Anti-SLAPP Act applies in federal court.  Virtually every court in the country that has addressed the *Erie* issue raised by Sherrod has held that state anti-SLAPP statutes are properly utilized and applied by the federal courts.  The two Massachusetts district

---

[1] "Fiscal Impact Statement – 'Anti-SLAPP Act of 2010,'" which is attached to the D.C. Council's Report on the Anti-SLAPP Act.  (*See* Exhibit 7 to Special Motion to Dismiss.)

court cases replied upon by Sherrod are contrary to the decisions in every other circuit, and in any event, have been effectively overruled by a December 2010 decision by the U.S. Court of Appeals for the First Circuit.

Third, the motion is not untimely.  The Court has granted extensions, by consent, on two occasions, that allowed Defendants to answer, move, or otherwise plead in response to the Complaint by April 18, 2011, the date the anti-SLAPP motion was filed.

Finally, Sherrod claims that her Complaint is well-pled and therefore does not constitute the type of case that was meant to be addressed by the anti-SLAPP statute.  This is not the legal standard.  The Defendants have demonstrated that the claims fall within the plain language of the statute, and accordingly, Sherrod now has the burden of showing a likelihood of success on the merits.  For the reasons set forth in the accompanying Rule 12(b) motion and reply briefs, Sherrod cannot prevail on claims based upon statements allegedly made by the Defendants that are protected expressions of opinion as a matter of law.  Accordingly, she has not stated a claim upon which relief can be granted, much less met her heightened burden under the anti-SLAPP statute.

For the reasons set forth in Defendants' Rule 12(b) motion, the case does not belong in this Court and should be transferred to the Central District of California.  It is apparent that Sherrod is seeking to avoid California's more mature anti-SLAPP statute in order to commence discovery in a far away and inconvenient forum for the Defendants.  If the Court declines to transfer the case for improper venue, the Defendants suggest that the Court consider holding a conference to discuss how to approach the SLAPP issues in light of the concurrently filed Rule 12(b) motion.  In the event the Court finds that this is the proper Court to rule upon the anti-SLAPP motion, it should be granted for the reasons stated herein.

II.   <u>ARGUMENT</u>

A.   <u>The District Of Columbia anti-SLAPP statute applies to this case.</u>

    1.   The statute was passed before this case was filed and Defendants filed their <u>motion almost immediately after it was enacted.</u>

The D.C. Anti-SLAPP Act was passed by the D.C. Council on December 7, 2010.  It was signed by Mayor Gray on January 18, 2011.  It was published in the D.C. Register on January 28, 2011, and after the mandatory congressional review period, became effective on March 31, 2011.  Accordingly, Sherrod was on notice prior to filing her lawsuit on February 11, 2011 in Superior Court that the D.C. Anti-SLAPP Act could and would be employed in this case.

Defendants filed their anti-SLAPP motion on April 18, 2011, within 18 days of the statute's enactment.  This was the parties' agreed-upon date for filing responsive pleadings, which was reflected in the two Court orders issued on March 15, 2011 and April 12, 2011.

    2.   The court need not determine whether the anti-SLAPP statute has <u>"retroactive effect."</u>

Sherrod attempts to argue that the anti-SLAPP statute does not apply to this case and that it should not be given retroactive effect.  Nothing in the plain language of the statute or its legislative history bars the statute from applying to cases pending upon its enactment, nor is there any basis to preclude applying the statute retroactively if necessary.

Sherrod contends that because she served her complaint on February 12, 2011, and the D.C. Anti-SLAPP Act became effective on March 31, 2011, that the statute could only apply if it were given retroactive effect.  Defendants are merely filing a motion after the legislature created the procedure for doing so.  As long as the motion was timely, which it was (*see* part C, *infra*), its application going forward cannot be held to be "retroactive."

Indeed, the legislative history to the D.C. Anti-SLAPP Act leaves no doubt that the District of Columbia Council intended that the statute apply to cases that were pending at the

time of enactment.  In the "Fiscal Impact Statement – 'Anti-SLAPP Act of 2010,'" which was submitted to the D.C. Council before it issued its Report on the D.C. Anti-SLAPP Act and was attached thereto, the Chief Financial Officer informed the Council that "[i]f effective, the proposed legislation could have a beneficial impact *on current* and potential *SLAPP defendants.*"  Ex. 7 to Special Motion at 25 (emphasis added).  Breitbart and O'Connor were "current" SLAPP defendants when the act became effective, and thus the statute applies to their case.

> 3.    The anti-SLAPP statute is sufficiently procedural to warrant retroactive application.

If the Court finds it necessary to analyze the retroactive effect of the statute, the overwhelming weight of authority has held that anti-SLAPP statutes should be held to apply to pending cases.  This retroactive application is appropriate because of the statutes' procedural nature.  Sherrod readily concedes that "procedural" statutes are retroactive and apply to pending cases, as set forth in *Montgomery v. District of Columbia*, 598 A.2d 162 (D.C. 1991) and its progeny.  She argues, however, that none of the cases cited in the Defendants' anti-SLAPP motion, which were all decided long before enactment of the D.C. Anti-SLAPP Act, "hold that the D.C. Anti-SLAPP Act of 2010 is retroactive."  Opp. 5.  This is not surprising, as the statute was just recently enacted.  The fact that no court has yet had the opportunity to interpret the statute in no way suggests that it should not apply to this case.

Sherrod further argues that the D.C. Anti-SLAPP Act is not "procedural."  However, in *Blumenthal v. Drudge*, 2001 WL 587860 (D.D.C. Feb. 13, 2001), this Court held that California's anti-SLAPP statute, upon which the D.C. statute is modeled, "is a procedural rule." *Id.* at *1.  Courts in California and elsewhere consistently have held that anti-SLAPP statutes apply to pending cases.  *See Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 352 (1995) ("[T]he statute applies to actions which accrued before its effective date because it does not change the

legal effect of past conduct.  A plaintiff may withstand a motion to strike by demonstrating

sufficient facts to establish a prima facie case."); *American Dental Ass'n v. Khorrami*, 2004 WL

3486525, *9 (C.D. Cal. Jan. 26, 2004) (amendment to anti-SLAPP statute applied to case already

pending in federal court); *Nguyen v. County of Clark*, 732 F. Supp. 2d 1190 (W.D. Wash. 2010)

(Washington anti-SLAPP statute applied retroactively to case pending in federal court);

*Shoreline Towers Condominium Ass'n v. Gassman*, 404 Ill. App. 3d 1013, 1022-23 (2010)

(Illinois anti-SLAPP statute applied retroactively to pending case); *Anderson Development Co. v.

Tobias*, 116 P.3d 323, 336 (Utah 2005) (Utah anti-SLAPP statute applied to continued

prosecution of case after statute was enacted, even though initial claims had been filed prior to

enactment).  Sherrod does not even acknowledge these cases, much less attempt to distinguish

them or their reasoning.[2]

There is no basis to interpret the D.C. Anti-SLAPP Act any differently.  The test of

whether a statute is retroactive is "if it changes the legal consequences of acts completed before

its effective date."  *Nixon v. District of Columbia Dep't of Employment Servs.*, 954 A.2d 1016,

1022 (D.C. 2008).  The D.C. Anti-SLAPP Act does not change the legal consequences of any

facts alleged in the Complaint.  It does not change the law on defamation or the other claims

asserted in the Complaint.  It merely creates a new mechanism to evaluate the sufficiency of

those claims at the outset of the case.

---

[2] Sherrod also argues that the D.C. anti-SLAPP statute should not be applied retroactively
because it has a provision for attorneys' fees and costs for the prevailing party.  Sherrod cites no
case holding that an anti-SLAPP statute should not be applied to pending cases for this reason.
To the contrary, as set forth above, courts in California, Washington, and Illinois have held that
their respective anti-SLAPP statutes can be applied retroactively, and all of those statutes have
attorneys' fees provisions.  *See* Cal. Civ. Proc. Code § 425.16(c)(1); RWC 4.24.510; 735 ILCS
110/25.  At the very least, this issue is premature and can be addressed if an application for
attorneys' fees arises after the motion has been ruled upon.

The legislative history of the Act further supports the procedural nature of the statute. Although the Committee Report references "substantive" rights at various points, it is clear that the substantive rights are actually the creation of expedited procedures for quickly disposing of SLAPP suits.  Specifically, the Committee Report states:

> Bill 18-893 adds new provisions in the D.C. Official Code to *provide an expeditious process* for dealing with [SLAPPs] . . . .  Specifically, the legislation provides a defendant to a SLAPP with substantive rights to have a motion to dismiss heard expeditious, [and] to delay burdensome discovery while the motion to dismiss is pending . . . .

Ex. 7 to Motion at 6 (emphasis added).  Indeed, it is not unusual that a procedural act would affect substantive rights – "most procedural rules do."  *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1442 (2010).  In the related context of determining whether a Federal Rule of Civil Procedure is truly procedural and is within the scope of the federal Rules Enabling Act, the Supreme Court considers whether it "really regulates procedure," i.e. "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering *remedy* and *redress* for disregard or infraction of them."  *Id.* (quotation omitted, emphasis added).  In this regard, the D.C. Anti-SLAPP Act can fairly be characterized as a remedial procedural statute.  Under D.C. law, remedial statutes are presumed to have retroactive effect.  *See Edwards v. Lateef*, 558 A.2d 1144, 1147 (D.C. 1989)*; see also Lacek v. Washington Hosp. Center Corp.*, 978 A.2d 1194 (D.C. 2009).  In fact, the legislative history of the D.C. Anti-SLAPP Act suggests that the Council viewed it as being remedial.  *See* Ex. 7 to Special Motion at 4 ("In June 2010, legislation was introduced *to remedy this nationally recognized problem* here in the District of Columbia.") (emphasis added).

Sherrod disregards the cases specifically concerning anti-SLAPP statutes, and instead contends that the District rule that procedural statutes are retroactive as set forth in *Montgomery* was somehow "limited or distinguished" by *Bank of America, N.A. v. Griffin*, 2 A.3d 1070 (D.C.

2010).  Opp. 6.  To the contrary, the *Bank of America* court cited the exact same rule, noting that "we observed [in *Montgomery*] that [u]nless a contrary legislative intent appears, changes in statute law which pertain only to procedure are generally held to apply to pending cases."  *Id.* at 1075-76.  The court merely applied the same rule to different facts.  In *Montgomery*, the court held that a statute that established a new tribunal for administrative appeals was procedural and would apply to pending cases.  In *Bank of America*, the court held that a statute that changed the priority rights on interests in real property was substantive and would not apply to pending cases.

In *Bank of America,* the issue was "a *lis pendens* statute that upended the common-law rule regarding rights of priority in the District of Columbia."  *Id.* at 1071.  While a lawsuit concerning ownership of a piece of real property was pending, the defendant took out a mortgage on the property and issued a deed of trust in favor of Bank of America.  *Id.*  Thereafter a dispute arose between the initial plaintiff and Bank of America, concerning whether the bank's interest in its deed of trust had priority over the plaintiff's judgment.

The new *lis pendens* statute was enacted a year after the initial lawsuit was filed, but before judgment was entered.[3]  It stated that a party was required to file a statutory *lis pendens* notice to give constructive notice of an adverse interest in real property.  Prior to that time, the common law rule was that merely filing the lawsuit had the legal effect of giving constructive notice.  *Id.* at 1072.  Thus, whether or not the initial plaintiff was retroactively required to record the *lis pendens*, even though it was not the law when the initial complaint was filed, was the dispositive issue in the case.

---

[3] Unlike in *Bank of America*, this case has not been pending for a year before a new statute was passed.  To the contrary, the D.C. Anti-SLAPP Act was passed in 2010, before this case was even filed, and became effective before the Defendants filed their responses to the Complaint.

The court found that the statute should not have been applied retroactively, because "it would most certainly affect the substantive rights of litigants who had cases pending on June 24, 2000 . . . that right of priority was 'substantive in the sense that the *lis pendens* provided constructive notice to all potential purchasers of the Property, thereby ensuring that anyone who acquired an interest in the Property during the pendency of the Original Lawsuit would take his or her interest subject to the final judgment." *Id*. at 1076.  The court contrasted this situation to the facts in *Montgomery*, which "is distinguishable, however, because the statute in that case was clearly procedural – it established a new tribunal for administrative appeals." *Id.* at 1076.

Accordingly, *Bank of America* did not overrule or in any way change the rule in *Montgomery*, nor does it compel a finding that the D.C. anti-SLAPP statute does not apply in this case.  Unlike the requirement to file a *lis pendens* in *Bank of America*, the D.C. Anti-SLAPP Act did not create a new law that would effect the rights of the parties and essentially decide the outcome of the case.  Rather, similar to the new tribunals at issue in *Montgomery*, the D.C. Anti-SLAPP Act simply created a new mechanism to evaluate the parties' claims.  Accordingly, the D.C. Anti-SLAPP Act should be held to be retroactive for the same reasons.  The Court should follow the well-reasoned authorities from California and other jurisdictions which have held that anti-SLAPP statutes apply to pending cases.

B.      The anti-SLAPP statute applies in federal court.

After insisting, albeit incorrectly, that the D.C. anti-SLAPP statute must be substantive and cannot be applied retroactively, Sherrod then contends that if the statute is procedural it cannot be applied in diversity cases in federal court under the *Erie* doctrine because it "directly conflicts with the Federal Rules of Civil Procedure."  Sherrod is attempting to create a false dichotomy which does not exist.  Federal courts have repeatedly recognized that statutes

considered "procedural" for retroactivity purposes are not automatically barred in federal court,

and accordingly have routinely applied state anti-SLAPP statutes in federal court.

The Ninth Circuit was the first court to reject the same arguments that are being asserted

by Sherrod when it held that the California anti-SLAPP statute was applicable in federal court.

*Newsham v. Lockheed Missiles & Space Co., Inc.,* 190 F.3d 963 (1999).  In *Newsham,* two

plaintiffs brought a *qui tam* action alleging that Lockheed Missiles and Space Company, Inc.

("LMSC") submitted millions of dollars of false claims for excessive nonproductive labor hours

on government projects.  In 1991, LMSC filed counterclaims.  *Id.* at 967.  Two years later, in

1993, the California legislature passed its anti-SLAPP statute.  *Id.* at 970.  The counterclaims

were dismissed but then reinstated in 1994.  *Id.* at 972.  In 1995, the district court granted the

plaintiffs' motion to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure

12(b)(6), but denied their motion to dismiss under the California anti-SLAPP statute, holding

that it was not applicable in federal court.  *Id.*  The U.S. Court of Appeals for the Ninth Circuit

reversed, explaining:

> In determining whether the relevant provisions of California's Anti-SLAPP
> statute may properly be applied in federal court, we begin by asking whether such
> an application would result in a 'direct collision' with the Federal Rules . . . Only
> two aspects of California's Anti-SLAPP statute are at issue:  the special motion to
> strike, Cal. Civ. P. Code § 425.16(b), and the availability of fees and costs, Cal.
> Civ. P. Code § 425.16(c).  We conclude that these provisions and Rules 8, 12, and
> 56 'can exist side by side . . each controlling its own intended sphere of coverage
> without conflict.'  (citations omitted).  A qui tam plaintiff, for example, after
> being served in federal court with counterclaims like those brought by LMSC,
> may bring a special motion to strike pursuant to § 425.16(b).  If successful, the
> litigant may be entitled to fees pursuant to § 425.16(c).  If unsuccessful, the
> litigant remains free to bring a Rule 12 motion to dismiss, or a Rule 56 motion for
> summary judgment.  We fail to see how the prior application of the anti-SLAPP
> provisions will directly interfere with the operation of Rule 8, 12, or 56.  In
> summary, there is no 'direct collision' here.
>
> LMSC correctly points out that the Anti-SLAPP statute and the Federal Rules do,
> in some respects, serve similar purposes, namely the expeditious weeding out of

meritless claims before trial.  This commonality of purpose, however, does not constitute 'direct collision' – there is no indication that Rules 8, 12, and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims.  (citation omitted).  The Anti-SLAPP statute, moreover, is crafted to serve an interest not directly addressed by the Federal Rules:  the protection of 'the constitutional rights of freedom of speech and petition for redress of grievances.'  Cal. Civ. P. Code § 425.16(a).

*Id.* at 972-73.

The court also held "that the twin purposes of the *Erie* rule – 'discouragement of forum-shipping and avoidance of inequitable administration of the law'" favored application of the law in federal court.  *Id.* at 973 (citations omitted).  The statute "adds an additional, unique weapon to the pretrial arsenal, a weapon whose sting is enhanced by a entitlement to fees and costs. Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum. Conversely, a litigant otherwise entitled to the protections of the anti-SLAPP statute would find considerable disadvantage in a federal proceeding.  This outcome appears to run squarely against the 'twin aims' of the *Erie* doctrine."  *Id.*

In summary, the court noted that "California has articulated the important, substantive state interests furthered by the Anti-SLAPP statute."  The court cited *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996) for the proposition that even if the state law was "purely procedural" it should still be applied in a diversity action if its objective could be held to be substantive.  *Newsham*, 190 F.3d at 973.[4]  The *Erie* rule is not a simple "procedural or substantive" analysis.  Thus, there is no inherent contradiction in holding that a state law was

---

[4] In *Gasperini*, the Supreme Court held that a New York state statute that gave judges the power to reduce excessive jury awards was properly given effect in federal court.  The court recognized that "classification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor."  *Id.* at 427.  In this case, the statute "contains a procedural instruction . . . but the State's objective is manifestly substantive."  *Id.* at 429.  Accordingly, utilizing the statute did not violate the *Erie* doctrine.

"procedural" and should be applied retroactively to pending cases, and also holding that it contained substantive objectives that should be applied in federal court.

Nearly every subsequent court that has addressed this issue has likewise concluded that state anti-SLAPP statutes apply in federal court.  *See Northon v. Rule*, 637 F.3d 937 (9th Cir. 2011) (Oregon anti-SLAPP statute applied in federal court); *Godin v. Schencks*, 629 F.3d 79, 91 (1st Cir. 2010) (Maine anti-SLAPP statute applied in federal court, citing and approving *Newsham*); *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 168-69 (5th Cir. 2009) (Louisiana anti-SLAPP statute applied in federal court, citing and approving *Newsham*); *Global Relief v. New York Times Co.*, 2002 WL 31045394, *11-12 (N.D. Ill. Sept. 11, 2002) (applying California anti-SLAPP statute in district court in the 7th Circuit; *USANA Health Sciences, Inc. v. Minkow*, 2008 WL 619287, *1-3 (D. Utah March 4, 2008) (applying California anti-SLAPP statute in district court in the 10th Circuit, citing *Newsham*); *Buckley v. DIRECTV, Inc.*, 276 F. Supp. 2d 1271, 1275 n.5 (N.D. Ga. 2003) (Georgia anti-SLAPP statute applied in federal court, plaintiff's contention to the contrary "is without merit," citing *Newsham*); *Bible & Gospel Trust v. Twinam*, 2008 WL 5216845 (D. Vt. July 18, 2008) (Vermont anti-SLAPP statute applied in federal court), magistrate report affirmed in *Bible & Gospel Trust v. Twinam*, 2008 WL 5245644 (D. Vt. Dec. 12, 2008); *Kentner v. Timothy R. Downey Ins., Inc.*, 430 F. Supp. 2d 844, 845-46 (S.D. Ind. 2006) (ruling on Indiana anti-SLAPP statute); *Blumenthal v. Drudge,* 2001 WL 587860 (D.D.C. Feb. 13, 2001) (ruling on California anti-SLAPP statute).

Sherrod ignores this extensive and pervasive authority and instead, relies upon two unpublished district court cases in Massachusetts – *The Saint Consulting Group, Inc. v. Litz*, 2010 WL 2836792 (D. Mass. July 19, 2010) and *Turkowitz v. Town of Provincetown*, 2010 WL 5583119 (D. Mass. Dec. 1, 2010).  Although both were decided just last year, these rulings pre-

date the First Circuit's December 22, 2010 decision in *Godin*, which, relying on *Newsham* and

other established authorities, held that the Maine anti-SLAPP statute applies in federal court.

*Godin*, 629 F.3d at 86 (noting that "the issue falls into the special category concerning the

relationship between the Federal Rules of Civil Procedure and a state statute that governs both

procedure and substance in the state courts. … This is not the classic *Erie* question.").[5]

      In *Godin*, the court concluded "that neither Fed. R. Civ. P. 12(b)(6) nor Fed. R. Civ. P.

56, on a straightforward reading of its language, was meant to control the particular issues under

[the Maine anti-SLAPP statute] before the district court." *Id.* As such, "there is no indication

that Rules … 12 and 56 were intended to 'occupy the field' with respect to pretrial procedures

aimed at weeding out meritless claims." *Id*. at 91 (*citing Newsham*). "Here, application of [the

anti-SLAPP statute] would best serve the "'twin aims of the *Erie* rule: discouragement of forum

shopping and inequitable administration of the laws.'" *Id.* (citations omitted).

      The only other authority cited by Sherrod is easily distinguished. In *Adventure Outdoors,*

*Inc. v. Bloomberg*, 519 F. Supp. 2d 1258 (N.D. Ga. 2007), the district court held that the

provision of the Georgia anti-SLAPP statute that required a complaint to be verified was at odds

with the federal rules of civil procedure and therefore should not be applied in federal court.

However, the court still applied the rest of the statute. The holding is irrelevant to this case

because the D.C. Anti-SLAPP Act does not contain a verification requirement. Moreover, the

court noted in *Adventure Outdoors* that its holding was contrary to other authority in the

Northern District of Georgia: *Buckley v. DIRECTV, Inc.*, 276 F. Supp. 2d 1271, 1275 n.5 (N.D.

---

[5] Sherrod also cites two earlier Massachusetts district court cases that reached the same result:
*South Middlesex Opportunity Council, Inc. v. Town of Framingham*, 2008 WL 4595369 (D.
Mass. Sept. 30, 2008) and *Stuborn Ltd. Partnership v. Bernstein*, 245 F. Supp. 2d 312, 316 (D.
Mass 2003). These cases also have been effectively overruled by *Godin*.

Ga. 2003) and *AirTran Airlines, Inc. v. Plain Dealer Publishing Co.*, 66 F. Supp. 2d 1355, 1369

(N.D. Ga. 1999). *Adventure Outdoors*, 519 F. Supp. 2d at 1278 n.8.

Sherrod lastly contends that the provisions of anti-SLAPP statutes that stay discovery

pending a ruling on the motion conflicts with federal law and cannot be applied in federal court,

citing *Metabolife International, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001). Sherrod misstates

the holding. The court actually noted that the California anti-SLAPP statute permits a party to

seek an order permitting it to conduct discovery if necessary. The court held that the district

court should have exercised its discretion and permitted the plaintiff to conduct discovery in

accordance with the established procedure – not that the statute itself was facially improper or

could not be applied in federal court. *Id.* at 846. In any event, it is also irrelevant to the case

herein. The D.C. Anti-SLAPP Act expressly permits a plaintiff to seek an Order to conduct

discovery if necessary to oppose the motion. *See* Section 3(c)(2). Sherrod did not do so,

rendering the point moot.[6]

The D.C. Anti-SLAPP Act fits squarely within the holding in *Newsham* and the

numerous other federal courts that have followed its reasoning and considered state anti-SLAPP

statutes in federal court. Courts in California[7], Washington[8], and Utah[9] have held that anti-

---

[6] Nor would Sherrod ever need to do so, since the present anti-SLAPP motion was based solely upon the argument that the claims failed as a matter of law, reserving other factual defenses for summary judgment or trial if necessary. *Price v. Stossel*, 620 F. 3d 992, 999 (9th Cir. 2010) (finding no need for discovery when anti-SLAPP motion was based solely upon legal arguments about falsity). *See also Godin, supra*, at 90-91 (Maine anti-SLAPP statute permitted party to seek to conduct discovery to oppose the motion if necessary; accordingly, it did not violate the federal rules).

[7] *Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 352 (1995) (anti-SLAPP statute retroactive); *American Dental Ass'n v. Khorrami*, 2004 WL 3486525, *9 (C.D. Cal Jan. 26, 2004) (amendment to anti-SLAPP statute applied to case already pending in federal court); *Newsham, supra* (anti-SLAPP statute applied in federal court).

[8] *Nguyen v. County of Clark*, 732 F. Supp. 2d 1190 (W.D. WA 2010) (Washington anti-SLAPP statute applied retroactively to case pending in federal court).

SLAPP statutes are retroactive *and* that they apply in federal court. Sherrod's claim that the issue is a straightforward either/or, procedural/substantive analysis, is wrong. To the contrary, the tests for retroactivity and applicability in federal court are not contradictory because they serve different purposes. The Court should follow this well-established precedent and apply the D.C. Anti-SLAPP Act in this Court.

C.    Defendants timely filed their motion.

Sherrod also contends that the motion should not be considered because it was untimely, as it was not filed within 45 days of service of the Complaint. The motion was filed on April 18, 2011 pursuant to two Court orders issued on March 15, 2011 and April 12, 2011. Sherrod consented to both orders and requested her own extension to file opposition papers, which the Defendants agreed to as a matter of course. *See* April 26, 2011 Minute Order. Sherrod's citation to *Blumenthal v. Drudge*, 2001 WL 587860 (D.D.C. Feb. 13, 2001) is irrelevant, because there were no court-ordered extensions in that case.

The extension ordered by the Court is broad and unambiguous; it extended the time for Defendants to "answer, move, *or otherwise plead* in response to Plaintiff's complaint." (emphasis added). This standard and straightforward language necessarily includes any response, including a Motion to Dismiss pursuant to the D.C. Anti-SLAPP Act. Sherrod does not cite the parties' agreed-upon language for the orders; rather, she claims that "at no point in time did Defendants ask for an extension of the *statutory* deadline for this motion, nor would Plaintiff have consented if asked." Opp. 13 n.7. Not surprisingly, Sherrod cites no authority drawing any distinction between a "statutory" deadline or some other type of deadline. In any

---

[9] *Anderson Development Co. v. Tobias*, 116 P. 3d 323, 336 (Utah 2005) (anti-SLAPP statute applied to continued prosecution of case after statute was enacted, even though initial claims had been filed prior to enactment); *USANA Health Sciences, Inc. v. Minkow*, 2008 WL 619287, *1-3 (D. Utah 2008) (applying anti-SLAPP statute in district court, citing *Newsham*).

event, all deadlines are creatures of statute, including the deadline to file a Rule 12 motion or an

Answer.  Sherrod also contends that she requested in writing a list of the motions that

Defendants planned to file, but provides no evidence of such a request nor does she explain how

this purported request could alter the language of the parties' agreement.  Accordingly, the

motion was timely filed.[10]

D.   Sherrod's claims fall within the plain language of the statute and fail
     as a matter of law.

Sherrod does not even attempt to argue that her causes of action do not directly implicate

the D.C. anti-SLAPP statute, nor can she.  The Anti-SLAPP Act applies to "Any written or oral

statement made … (ii) in a place open to the public or a public forum in connection with an issue

of public interest."  Section 2(1)(A)(ii).  "Issue of public interest" is in turn defined as "an issue

related to health or safety; environmental, economic, or *community well-being*; the District

government; *a public figure*; or a good, product, or service in the market place."  Section 2(3)

(emphasis added).  The blog post was a written statement accessible to the public, and it

concerned issues of community well-being related to a high ranking government official, an

admitted public figure.  This is all that is required.

Sherrod's contention that Breitbart does not "show any signs of having his First

Amendment rights 'muzzled,' as his persistent blog postings and national tour to garner publicity

---

[10] The motion was also timely even without the extension, because it was filed shortly after the statute's enactment, well within the 45 days set forth therein.  The Complaint was served on February 12, 2011.  Forty-five days later was March 30, 2011.  However, the D.C. anti-SLAPP statute did not become effective until March 31, 2011.  Thus, it would not have been possible to file the motion on March 30, 2011.  The decisions that hold that anti-SLAPP statutes apply to pending cases do not hold that they would only apply to the cases that happened to have been filed immediately prior to the respective statutes' enactments.  To the contrary, they applied to cases even if the parties had already been engaged in litigation for some time  *See, e.g.*, *Shoreline Towers Condominium Ass'n v. Gassman*, 404 Ill. App. 3d 1013, 1022, 1025 (2010) (complaint filed in March 2007, anti-SLAPP statute enacted in August 2007, anti-SLAPP motion filed in November 2007); *Anderson Development Co. v. Tobias*, 116 P. 3d 323, 336 (Utah 2005) (complaint filed in 1998, anti-SLAPP statute enacted in 2001, anti-SLAPP motion filed in 2002).

for his new book evidence," does not affect the applicability of the anti-SLAPP statute to this

case.  Opp. 17; *see also* Opp. 3 n.2.  It is well recognized that media defendants such as Breitbart

are fully entitled to utilize the procedures afforded by anti-SLAPP statutes notwithstanding their

ability to continue to exercise their First Amendment rights.  *Lafayette Morehouse, Inc. v.*

*Chronicle Publishing Co.,* 37 Cal. App. 4th 855, 863 (1995) (plain language of statute applied to

libel cases brought against a media outlet for reporting on issues of public concern); *Stern v.*

*Doe*, 806 So. 2d 98, 100 (La. Ct. App. 2001) ("the purpose of [the Louisiana anti-SLAPP statute]

is to review frivolous and meritless claims against the media at a very early stage in the legal

proceeding").

     In any event, Sherrod ignores the fact that she repeatedly threatened to sue Defendants

and opined that it would be a "great thing" if their website was shut down.  Moreover, she and

her attorney actually have been successful in silencing Breitbart.  For example, on October 31,

2010, her then-counsel Rose Sanders gave an interview wherein she objected to Breitbart's

scheduled appearance on ABC News' election night coverage, stating "Having him on that show

is like rewarding a Klansman – giving a Klansman an award for burning a cross on Shirley

Sherrod's house."[11]  ABC then dropped Breitbart from the election night coverage.  Furthermore,

Sherrod is continually scrutinizing Breitbart's public statements and attempting to use his speech

against him in this litigation.  Her opposition papers are replete with cites to public statements

Breitbart has made, none of which are relevant to the merits or to the claims at issue in the

Complaint.

---

[11] *See* Joe Strupp, Sherrod's Attorney Blasts ABC, Says Hosting Breitbart Is 'Like Rewarding a Klansman,' Media Matters for America, available at http://mediamatters.org/blog/201010310013 (attached as Exhibit 1).

Finally, Sherrod argues that "unlike some other defamation claims, [her] Complaint is specific, well-pled, and replete with actionable facts." Opp. 15.  Again, this is not the relevant legal standard.  Sherrod must demonstrate a likelihood of success on the merits.  For the reasons set forth in Defendants' motion to dismiss pursuant to Rule 12(b)(6), and their concurrently filed reply brief, each of the purportedly defamatory statements fails as a matter of law because it was a non-actionable expression of opinion based on truthful disclosed facts, non-actionable opinion that is not a provably false statement of fact, or a constitutionally-protected expression of opinion.  Defendants hereby respectfully incorporate the relevant sections of their Rule 12(b) motion and reply herein.[12]

III.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that if the Court declines to transfer the case for improper venue, it should grant this Special Motion pursuant to the D.C. Anti-SLAPP Act.

---

[12] Sherrod's request for attorneys' fees should be denied.  Sherrod should not prevail on the motion, and even if she did she is not entitled to attorneys' fees because there can be no finding that the Defendants' motion "is frivolous or is solely intended to cause unnecessary delay." Section 5(b).  Sherrod's contention that she meets this standard is exceedingly disingenuous given that the case law overwhelmingly supports the Defendants' positions that anti-SLAPP statutes are retroactive and that they apply in federal court.  Sherrod's contention that the motion was untimely notwithstanding the fact that it was filed pursuant to an agreed-upon extension entered by the Court is equally meritless.  The Defendants, not Sherrod, should be entitled to their attorneys' fees as the prevailing parties.  Section 5(a) (moving party who prevails is entitled to fees without having to meet any additional standard).

Respectfully submitted,

By:    /s/ Bruce W. Sanford
        Bruce W. Sanford (356568)
        Mark I. Bailen (459623)
        BAKER & HOSTETLER LLP
        1050 Connecticut Avenue, NW, Suite 1100
        Washington, DC 20036
        Tel:  202-861-1500
        Fax:  202-861-1783
        bsanford@bakerlaw.com
        mbailen@bakerlaw.com

*Attorneys for Defendant Larry O'Connor*

/s/ Eric A. Kuwana
Eric A. Kuwana (440424)
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, NW, Suite 200
Washington, DC 20007
Tel:  202-625-3700
Fax:  202-295-1107
eric.kuwana@kattenlaw.com

Alan D. Croll (admitted *pro hac vice*)
Harrison J. Dossick (admitted *pro hac vice*)
Ryan J. Larsen (admitted *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Tel:  310-788-4400
Fax:  310-788-4471

*Attorneys for Defendant Andrew Breitbart*