UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRLEY SHERROD,<br><br>       Plaintiff,<br><br>    v.<br><br>ANDREW BREITBART, LARRY O'CONNOR, AND JOHN DOE,<br><br>       Defendants. | Case No. 1:11-cv-00477 (RJL) |

**DEFENDANT LARRY O'CONNOR'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PROTECTIVE ORDER REGARDING JOHN DOE**

**I.  Preliminary Statement**

The declaration of John Doe, attached hereto as Exhibit A, sets forth compelling reasons and good cause for the protective order. If John Doe's identity is disclosed beyond this Court and counsel of record, his livelihood, way of life, and personal safety will be at risk and he will face retaliation and harassment in his community and workplace. The harm to Doe from public disclosure of his identity will be irreparable.

Moreover, there is no legitimate need to disclose the identity of John Doe beyond the court and counsel of record because he has virtually nothing to do with the case. As his declaration makes clear, his only involvement was to provide journalists Andrew Breitbart and Larry O'Connor with a DVD copy of the speech, and excerpts of the speech, that Shirley Sherrod gave before the NAACP in or around March 2010 and which was recorded and broadcast (*i.e.* published) on a local cable channel. Doe did not write, edit, or publish the Blog Post that is the subject of this case. Furthermore, he has no contacts with Washington, D.C. that would permit jurisdiction over him as a party. Any effort to make John Doe a party is based on a fundamental

misconception of the facts.

Constitutional and common law privileges protect the compelled disclosure of Doe's identity. But in light of his limited involvement in the case and the interest of facilitating the expeditious development of a factual record to prepare this case for dismissal on summary judgment, O'Connor, subject to an express reservation of all privileges and rights,[1] moves this Court to issue a protective order – consistent with the constitutional and common law privileges – restricting disclosure of Doe's identity to this Court and counsel of record. The entry of this order will avoid protracted litigation and promote a more efficient adjudication of the case.

## II.     Statement of Facts

John Doe's role in this litigation is limited to the fact that he provided excerpts of Plaintiff Shirley Sherrod's publicly available speech to the Defendants. He came across Sherrod's speech at the 2010 NAACP banquet by chance while watching his local cable television channel. Declaration of John Doe (hereafter "Doe Decl.") ¶ 4, attached hereto as Exhibit A. He was disturbed by what he heard and believed journalists would be interested in commenting on Sherrod's remarks. *Id.* ¶¶ 5-6. Accordingly, he contacted journalist Andrew Breitbart and sent him a DVD of the speech. *Id.* ¶¶ 6-8. Approximately two months later, he received a call from O'Connor, who said that the DVD did not play on his computer and who requested another copy. *Id.* ¶ 9. O'Connor also asked John Doe, in the interests of time, to send him some of the video over the Internet and to email him some exact quotations from the speech.

---

[1]     This reservation includes O'Connor's and Doe's assertion of all rights and privileges under applicable shield laws, the reporters' privilege doctrine, the First Amendment, and the common law that would prevent any disclosure of Doe's identity in the event this motion is denied or the relief is granted but is later modified or vacated.

*Id.* ¶¶ 10-12, Exs. A-D.

Sherrod has named John Doe as a defendant on the mistaken belief that he published video of Sherrod's speech on YouTube, Compl. at ¶ 58, and inserted "inaccurate text" into the video, *id.* ¶¶ 46, 56. He did no such thing. *See* Doe Decl. ¶ 13 ("I inserted nothing into the excerpts . . . . I have never posted video on YouTube or any other website in my life."). Nor did he contribute to any of the commentary on the Breitbart website regarding the video. *Id.* ¶ 13.

John Doe is a full-time resident of Georgia. *Id.* ¶ 3.[2] If he is publicly disclosed as the person who provided a copy of Sherrod's speech to Breitbart and O'Connor, he fears that he will be subject to retaliation and harassment in his community and workplace. *Id.* ¶ 2 ("If my identity in connection with this case is publicly disclosed, I will be subject to retaliation and harassment in my community and my workplace. I will suffer the almost certain loss of my job, which provides my family with its principal support. I will also fear for my personal safety and the physical safety of my family. . . . I believe I will be unemployable and unable to maintain my residency in the town where I have made my home for many years.").

**III.    Argument**

    A.    <u>Standard of Review</u>

This Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1), including by issuing an order "that the disclosure or discovery may be had only on specified terms and conditions," Fed. R. Civ. P. 26(c)(2). "While it is the movant's burden to articulate

---

[2]    John Doe has no contacts with the District of Columbia for business or otherwise and expressly does not subject himself to the jurisdiction of this Court. *See* Doe Decl. ¶ 3.

3

specific facts showing clearly defined and serious injury resulting from the discovery sought, Rule 26(c) gives the court broad discretion to limit discovery in a particular case." *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 226 F.R.D. 56, 57 (D.D.C. 2004) (J. Leon) (internal citations and quotation marks omitted).

  B. <u>There Is Good Cause to Limit the Disclosure of John Doe's Identity.</u>

The requisite "good cause" under Federal Rule 26(c) to restrict disclosure of a vulnerable witness's identity exists where disclosure would jeopardize the witness's safety or livelihood. For example, in *Management Information Technologies, Inc. v. Alyeska Pipeline Services Co.*, 151 F.R.D. 478 (D.D.C. 1993), the court denied a motion to compel disclosure of a civil RICO plaintiff's contacts within the defendant company based on the "possible retaliation that frequently results when a whistleblower is identified." *Id.* at 481; *cf. Myers v. Koopman*, No. 09-cv-02802, 2010 WL 1488005, at *3-4 (D. Colo. Apr. 13, 2010) (applying protective order in § 1983 action in order to protect defendants' interest in the confidentiality of their informants' identifies and therefore to encourage individuals to provide information to law enforcement without fear of reprisal). Even in criminal cases, where the bar for restricting disclosure is set much higher in light of the Confrontation Clause of the Sixth Amendment, courts may restrict disclosure of a vulnerable witness's identity. *See, e.g.*, *United States v. Celis*, 608 F.3d 818, 832-33 (D.C. Cir. 2010) (holding that the entry of protective order allowing a witness to testify under a pseudonym did not violate the defendant's confrontation rights in light of the potential danger to the witness).

The Fifth Circuit's decision in *Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir. 1980), is particularly instructive because the restriction on disclosure was, as in the present case, in the context of a libel suit. The case involved a libel claim against the publisher of a

4

magazine brought by a trustee of a pension fund who also served as treasurer of a union. The magazine printed an article alleging that the trustee misappropriated pension funds. *Id.* at 722. Notably, although a "reporter's privilege" was not available to the defendant, *id.* at 725, the Fifth Circuit nonetheless instructed the district court to ensure that the disclosure of the individual's identity would be subject to an order "restricting the information about the informant's identity to counsel." *Id.* The Fifth Circuit recognized that there was a risk to the individual based upon his or her status as a "confidential informant," postulating that "a defamed plaintiff might relish an opportunity to retaliate against the informant." *Id.* at 726.

More recently, Judge Kaplan granted a motion for protective order restricting disclosure of the identity of two "Doe" witnesses to U.S. counsel of record in *Chevron v. Donzinger*, No. 11 Civ. 0691(LAK), 2013 WL 646399 (S.D.N.Y. Feb. 21, 2013), in which the energy company Chevron alleges that a substantial judgment entered against it by an Ecuadorian court was fraudulently obtained. The confidential witnesses submitted declarations averring that they reside in Ecuador and fear that they will be subject to reprisals if the government of Ecuador, a non-party, learns their identities. Judge Kaplan noted that the government of Ecuador is sympathetic to the parties who secured the judgment and that the witnesses' testimony is favorable to Chevron. This ruling demonstrates that judicial action to safeguard the identity of a vulnerable witness is appropriate even where the threat of "reprisal" is by a non-party.

John Doe's role in this case is analogous to the witnesses in *Chevron*, *Management Information Technologies, Inc.*, 151 F.R.D. 478, and *Miller*, 621 F.2d 721. He informed Breitbart and O'Connor of Sherrod's speech and her confession that she once treated a white farmer differently from a black farmer based on skin color alone. As in *Miller* and other authority, Sherrod, as the party allegedly defamed, may seek "an opportunity to retaliate" against

5

John Doe. *Miller*, 621 F.2d at 726; *see also Mgmt. Info. Techs., Inc.*, 151 F.R.D. at 481 (acknowledging the "possible retaliation that frequently results when a whistleblower is identified"). Furthermore, as in *Chevron*, the retaliation could also come from non-parties, including residents of John Doe's close-knit community or from his employer. The NAACP issued a statement accusing those involved in the release of Sherrod's speech of being "extremist elements." Docket Doc. No. 22-15. John Doe fears that public disclosure of his identity would render him *unemployable* in his community and force his family into exile. *See* Doe Decl. ¶¶ 2, 7 ("Indeed, because I live in a close-knit community and work with large numbers of black workers, my job, my livelihood, and my personal safety would be irreparably harmed if I were publicly identified.").

The good cause for issuing a protective order is further bolstered by the law's recognition of the legitimacy of keeping confidential the identities of Doe defendants in cases implicating First Amendment principles. For example, anonymous speakers are protected under the rule articulated in *Solers, Inc. v. Doe*, 977 A.2d 941 (D.C. 2009), which requires a defamation plaintiff seeking to use the judicial process to learn the identity of a Doe defendant to, among other things, "proffer evidence to show that [she] has a viable claim of defamation" against the Doe defendant which requires presenting evidence "sufficient to create a genuine issue of material fact with respect to all the elements of the defamation claim within the plaintiff's control." *Id.* at 955 (internal citation and quotation marks omitted). Sherrod cannot meet this burden for the fundamental reasons (among others) that she cannot show that this Court has personal jurisdiction over him or that Doe published any allegedly defamatory statements about Sherrod. *See* Doe Decl. ¶¶ 3, 13.

Accordingly, requisite good cause exists to restrict disclosure of John Doe's identity to

this Court and counsel of record. *See* Fed. R. Civ. P. 26(c)(1).

    C.    <u>The Protective Order Will Not Prejudice Sherrod's Case.</u>

The protective order will not prejudice Sherrod's case because it would not prohibit the discovery she seeks. *See Gravolet v. Tassin*, No. 08–3646, 2009 WL 1210877, at *1-2 (E.D.La. May 4, 2009) (finding that "disciplinary records and personnel files regarding defendants" that were essential to plaintiff's case could be made subject to a protective order "limiting the disclosure of investigative files to attorney's and expert's eyes only"). To the contrary, the protective order would facilitate discovery because John Doe's identity would be disclosed to Sherrod's counsel, who could then seek to take John Doe's deposition, on the condition that Sherrod neither attend the deposition nor be made privy to information that would lead to the disclosure of John Doe's identity (such as his address, employer, or the identity of others who know Doe). Furthermore, Sherrod's counsel could move to modify the protective order if cause to do so arises at any time, but that is an unlikely scenario given John Doe's limited role as a local resident who provided Breitbart and O'Connor with publicly available video of the speech of a public official.

**IV.**    **Conclusion**

For the foregoing reasons, Defendant Larry O'Connor respectfully requests that this Court grant this motion and issue a Protective Order providing that disclosure of Defendant John Doe's identity shall be restricted to this Court and counsel of record.

DATED: September 6, 2013

Respectfully submitted,

/s/ Mark I. Bailen
Bruce W. Sanford (356568)
Bruce D. Brown (457317)
Mark I. Bailen (459623)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. NW, Suite 1100
Washington, DC 20036
Tel: 202-861-1715
Fax: 202-861-1783
bsanford@bakerlaw.com
bbrown@bakerlaw.com
mbailen@bakerlaw.com

*Attorneys for Defendant Larry O'Connor*