# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **SHIRLEY M. SHERROD,** | ) No. 1:11-cv-00477-RJL |
| ) | |
| ) **STATUS CONFERENCE** | |
| **Plaintiff,** ) **MEMORANDUM OF THE UNITED** | |
| ) **STATES** | |
| **v.** ) | |
| ) | |
| **SUSANNAH BREITBART,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

     A.     USDA Rural Development (USDA RD) ...............................................2

     B.     Plaintiff and Her Speech to the National Association for the
           Advancement of Colored People (NAACP) ..........................................3

     C.     The Requests under FOIA ....................................................................5

     D.     This Action.............................................................................................5

     E.     The Third-Party Subpoenas of Plaintiff and Defendant O'Connor ......6

DISCUSSION .......................................................................................................................7

I.     THE THIRD-PARTY SUBPOENAS OF PLAINTIFF AND DEFENDANT
      O'CONNOR ARE OBJECTIONABLE BECAUSE THEY SEEK
      DOCUMENTS AND INFORMATION HAVING NO RELEVANCE TO
      THIS ACTION.............................................................................................7

II.    THE THIRD-PARTY SUBPOENAS OF PLAINTIFF AND DEFENDANT
      O'CONNOR ARE OBJECTIONABLE BECAUSE THEY SEEK TO
      EMBROIL THE UNITED STATES IN A CAMPAIGN OF DISCOVERY
      INAPPROPRIATE TO ITS ROLE AS A THIRD-PARTY WITNESS.............................9

III.   THE THIRD-PARTY SUBPOENAS OF PLAINTIFF AND DEFENDANT
      O'CONNOR ARE OBJECTIONABLE BECAUSE THEY SEEK
      DISCOVERY FROM EOP WITHOUT MEETING THE HIGH BURDEN
      REQUIRED BY CONTROLLING LAW .......................................................11

IV.   DESPITE ITS OBJECTIONS TO THE THIRD-PARTY SUBPOENAS OF
      PLAINTIFF AND DEFENDANT O'CONNOR, THE UNITED STATES
      HAS SOUGHT TO COOPERATE BY VOLUNTARILY PRODUCING
      CERTAIN OF THE DOCUMENTS COVERED BY THOSE SUBPOENAS.................13

CONCLUSION....................................................................................................................15

i

## TABLE OF CASES

**Page**

*Armstrong v. Thompson*, 80 A.3d 177 (D.C. 2013) ........................................................................8

*Cheney v. U.S. Dist. Ct.*, 542 U.S. 367 (2004) ..............................................................11, 12, 14

*Food Lion, Inc. v. United Food & Comm'l Workers*, 103 F.3d 1007 (D.C. Cir. 1997) .............7, 8

*Reshard v. Lahood*, 358 F. App'x 196 (D.C. Cir. 2009) ................................................................7

*Watts v. SEC*, 482 F.3d 501 (D.C. Cir. 2007) ........................................................................9, 10

## TABLE OF DOCKET ENTRIES

ECF No. 1            Notice of Removal (Mar. 4, 2011)

ECF No. 1-2          Complaint (Feb. 11, 2011)

ECF No. 37           Answer of Defendant Andrew Breitbart (Aug. 11, 2011)

ECF No. 38           Answer of Defendant Larry O'Connor (Aug. 11, 2011)

ECF No. 68           Plaintiff Shirley Sherrod's Motion for Substitution of Deceased Defendant
                     Adrew Breitbart (Sept. 18, 2013)

# TABLE OF EXHIBITS

Ex. A          USDA Transcript, Rel. No. 0421.10 (Aug. 24, 2010), http://www.
               usda.gov/wps/portal/usda/usdamediafb?contentid=2010/08/0421.xml&pri
               ntable=true&contentidonly=true (accessed Feb. 8, 2014)

Ex. B          Statement of Secretary of Agriculture Tom Vilsack (July 20, 2010),
               http://talkingpointsmemo.com/muckraker/agriculture-secretary-stands-by-
               asking-for-sherrod-s-resignation (accessed Feb. 7, 2014) (advertising
               deleted)

Ex. C          USDA Transcript, Rel. No. 0383.10 (July 21, 2010), http://www.
               usda.gov/wps/portal/usda/usdamediafb?contentid=2010/07/0383.xml&pri
               ntable=true&contentidonly=true (accessed Feb. 7, 2014)

Ex. D          Press Briefing by Press Secretary Robert Gibbs, http://www.whitehouse.
               gov/the-press-office/press-briefing-press-secretary-robert-gibbs-7212010
               (accessed Feb. 8, 2014)

Ex. E          Letter Beth A. Williams to Alexis R. Graves (Oct. 30, 2013) (with
               redactions under Fed. R. Civ. P. 5.2(a))

Ex. F          Subpoena Larry O'Connor to United States Department of Agriculture
               (Nov. 19, 2013)

Ex. G          Subpoena Larry O'Connor to Executive Office of the President (Nov. 20,
               2013)

Ex. H          Email Thomas E. Hogan to David Glass (Feb. 3, 2014) & preceding email

Ex. I          Email Stephanie S. Thibault to David Glass (Feb. 10, 2014) & preceding
               email

## INTRODUCTION

This is an action among private parties for defamation, false light invasion of privacy, and intentional infliction of emotional distress. ECF No. 1-2 ¶¶ 1-2.[1]  It does not implicate any public or governmental interests.  Thousands of pages of documents pertaining to plaintiff, Shirley M. Sherrod, have already been released by the U.S. Department of Agriculture (USDA) in the ordinary course of business under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  Despite that fact, plaintiff and defendant Larry O'Connor seek to enmesh the United States in a highly-charged private dispute through irrelevant and burdensome third-party discovery.  They thus have issued third-party subpoenas of enormous breadth to USDA and to the Executive Office of the President (EOP).  They also propose to issue third-party deposition subpoenas to at least 10 current and former government officials.  Their doing so is inappropriate because the sole relevant evidence that the United States can contribute to this action is beyond dispute and is already in the public domain.  For those reasons, compliance with the fishing expedition upon which plaintiff and defendant O'Connor have embarked would impose substantial costs and burdens on the United States, and therefore on the taxpayers, without any discernible benefit to anybody.

By minute order dated February 3, 2014, as amended, this Court has scheduled a status conference for February 20, 2014, and directed the United States to appear through counsel.  The United States anticipates that one of the subjects of the status conference will be the third-party subpoenas that plaintiff and defendant O'Connor have issued and propose to issue to the United States.  The United States considers those subpoenas to be objectionable for three separate

---

[1] A table docket entries cited in this memorandum appears at p.iii, *supra.*

reasons.  First, the subpoenas seek documents and information having no relevance to this action.

Second, the subpoenas seek to embroil the United States in a campaign of discovery

inappropriate to its role as a third-party witness.  Third, the subpoenas seek discovery from EOP

without meeting the high burden required by controlling law.

Although the United States thus objects to the third-party subpoenas that plaintiff and

defendant O'Connor have issued and propose to issue to it, it has sought to cooperate by

voluntarily producing certain of the documents covered by those subpoenas.  While the United

States is prepared to continue doing so to the extent that it considers doing so reasonable and

appropriate, it is also prepared to move to quash any and all such subpoenas unless plaintiff and

defendant O'Connor limit substantially the documents and information that they seek from the

United States.

## BACKGROUND

### A.     USDA Rural Development (USDA RD)

USDA RD is a component of USDA.  Committed to helping improve the economy and

quality of life in rural America, USDA RD operates financial programs that support certain

essential public facilities and services; promotes economic development by supporting loans to

businesses through banks, credit unions and community-managed lending pools; offers technical

assistance and information to help agricultural producers and cooperatives get started and

improve the effectiveness of their operations;  and provides technical assistance to help

communities undertake community empowerment programs.

USDA RD maintains offices in 47 states and Puerto Rico.  The director of each of those

offices is known as the "state director of USDA RD" for the state, possession, or group of states

and possessions that his or her office covers.

**B.** **Plaintiff and Her Speech to the National Association for the Advancement of Colored People (NAACP)**

Plaintiff was the state director of USDA RD for Georgia from August 17, 2009, until July 29, 2010.  ECF No. 1-2 ¶¶ 22, 72, 77.[2]  She was a political appointee.[3]  *See* Ex. A at 2.[4]  An African-American, she gave a speech to an NAACP banquet in Douglas, Georgia, on March 27, 2010.  ECF No. 1-2 ¶ 71; ECF No. 38 ¶ 25.  Lasting for 43 minutes, plaintiff's speech featured an anecdote about her alleged experience "helping two white farmers, Roger and Eloise Spooner, save their farm from foreclosure more than twenty years earlier."  ECF No. 1-2 ¶¶ 27, 43.  The alleged point of the anecdote was to "underscore[] the importance of providing assistance to those in need, regardless of race."  *Id.*¶ 26.

Prior to his death in 2012, defendant Andrew Breitbart was "a well-known blogger, author, publisher, and media figure."[5]  ECF No. 37 ¶ 10; ECF No. 68 at 1.  On July 19, 2010, defendant Breitbart published a blog post, entitled *Video Proof: The NAACP Awards Racism-2010*, on his website, *BigGovernment.com*.  ECF No. 1-2 ¶ 30; ECF No. 37 ¶ 30.  Embedded in the blog post was a video of a short excerpt of the speech that plaintiff had given to the NAACP banquet.  ECF No. 37 ¶¶ 3, 30.  Slides introducing the video said the following:

> On July 25, 2009 Agriculture Secretary Tom Vilsack appointed Shirley Sherrod as Georgia Director of Rural Development[.]  USDA Rural Development spends over $1.2 billion in the State of Georgia each year.  On March 27, 2010, while speaking at the NAACP Freedom Fund Banquet . . . Ms. Sherrod admit[ted] that

---

[2] A table of docket entries cited in this memorandum appears at p. v, *supra*.

[3] State directors of USDA RD are typically political appointees.  *See* House Committee on Oversight and Government Reform, *United States Government Policy and Supporting Positions (Plum Book), 2012* at 13 (available at http://www.gpo.gov/fdsys/pkg/GPO-PLUMBOOK-2012/pdf/GPO-PLUMBOOK-2012.pdf).

[4] References to exhibits are to the exhibits to this memorandum.  A table of exhibits appears at p. iv, *supra*.

[5] As discussed below, the widow of defendant Breitbart has been substituted for defendant Breitbart as a defendant in this action.  The term "defendant Breitbart" is nonetheless used in this memorandum to refer to Andrew Breitbart.

in her federally appointed position, overseeing over a billion dollars . . . [s]he
discriminates against people due to their race.

*Id.* ¶¶ 32-36.

On July 19, 2010, Secretary Vilsack responded to the video that defendant Breitbart had

embedded in his blog post by asking for, and accepting, plaintiff's resignation. Ex. B; Ex. C at 2.

Explaining why he had done so, Secretary Vilsack gave the following two reasons:

> First, for the past 18 months, we have been working to turn the page on the sordid
> civil rights record at USDA and this controversy could make it more difficult to
> move forward on correcting injustices.  Second, state rural development directors
> make many decisions and are often called to use their discretion.  The controversy
> surrounding her comments would create situations where her decisions, rightly or
> wrongly, would be called into question making it difficult for her to bring jobs to
> Georgia.

Ex. B.  Responding to questions, Secretary Vilsack said that "[t]here was no pressure from the

White House" and that "[t]his was my decision."  Ex. C at 1, 2.  The White House Press

Secretary gave a similar response when asked similar questions.  Ex. D at 1.

On July 20, 2010, "the NAACP released the full video of Plaintiff's speech."  ECF No.

38 ¶ 80.  The release of the video made it apparent to Secretary Vilsack that "this was a

circumstance and situation where [plaintiff's] comments were taken totally and completely out of

context, and that [her] main message * * * was very supportive of what we're trying to do at

USDA."  Ex. A at 3.  Viewing plaintiff as someone with "a unique set of skills" that would "lend

themselves to assisting and helping USDA as we deal with trying to turn the page on our civil

rights chapter," Secretary Vilsack offered plaintiff an alternative position at USDA during a

conversation that he had with her on July 21, 2010, and later offered to reinstate her to her old

position.  *Id.* at 1; Ex. C at 1, 4.  Though describing herself as "tempted," plaintiff turned down

both offers on August 24, 2010.  Ex. A at 4.

4

### C.     The Requests under FOIA

Following the publication of defendant Breitbart's blog post, USDA began receiving a

series of requests under FOIA for documents pertaining to plaintiff.  One such request, dated

July 28, 2010, asked USDA to produce the following:

> [1]  Any and all emails, phone logs, or communications of any sort between
> March 1, 2010 and July 28, 2010 regarding former USDA employee Shirley Sherrod and
> her March 27, 2010 speech to a local NAACP meeting in Georgia.  This includes but is
> not limited to any communications within USDA or between USDA and parties inside
> and outside government regarding preparation of the speech, delivery of the speech, her
> efforts to inform superiors of potential fallout from the speech and communications about
> the request to ask her to resign, efforts to contact her, the decision to offer her a new job
> and discussions about the new job.

> [2]  Any and all emails, phone logs, or communications of any sort within USDA
> or with outside parties that mention the words "Shirley Sherrod" or "Sherrod" between
> July 18-28.

> [3]  Any and all emails, phone logs, or communications of any sort regarding
> Shirley Sherrod involving Agriculture Secretary Tom Vilsack, Deputy Undersecretary
> Cheryl Cook, Chief of Staff Karen Ross, and the office of White House liaison.

USDA responded to the FOIA requests by releasing 900 pages on October 5, 2010, and

another 1,964 another pages on February 24, 2012.  USDA withheld certain material from the

pages as released pursuant to the exemption provisions to FOIA, 5 U.S.C. § 552.  A set of the

pages as released was sent to plaintiff on February 23, 2012.  Defendant O'Connor has obtained

a set of those pages.

### D.     This Action

This action against defendants Breibart and O'Connor and against defendant John Doe

was commenced in the Superior Court of the District of Columbia on February 11, 2011.

Defendant O'Connor describes himself as a "blog[ger] for websites operated by Breitbart."  ECF

No. 38 ¶ 11.  The United States is not a party to this action.

By notice dated March 4, 2011, defendants Breitbart and O'Connor removed this action to this Court because of the alleged diversity of citizenship among the parties.  On August 11, 2011, defendant O'Connor filed an answer in which he asserted 23 affirmative defenses.  On the same day, defendant Breitbart filed an answer in which he asserted 17 affirmative defenses, including the defense that "[plaintiff] is barred from recovery because her damages, if any, * * * were caused by the acts of others."  ECF No. 37 at 15.  With the possible exception of that defense, none of the affirmative defenses asserted by either defendant implicates any act of the United States.

Defendant Breibart died on or about March 1, 2012.  ECF No. 68 at 1.  On September 18, 2013, plaintiff moved to make his widow a defendant in his stead.  The Court granted that motion on October 16, 2013.  By scheduling order entered November 20, 2013, the Court ordered discovery in this action to be completed no later than May 9, 2014.

**E.    The Third-Party Subpoenas of Plaintiff and Defendant O'Connor**

By third-party subpoena dated October 30, 2013, plaintiff asked USDA to produce 10 categories of documents allegedly relevant to this action.  Ex. E, sched. A at 4-5.  By request dated October 30, 2013, plaintiff asked USDA to produce substantially the same documents under FOIA and the Privacy Act, 5 U.S.C. § 552a.  *Id*. at 1-2.

By third-party subpoena dated November 19, 2013, defendant O'Connor asked USDA to produce 44 categories of documents allegedly relevant to this action.  Ex. F, sched. A at 4-7.  By third-party subpoena dated November 20, 2013, defendant O'Connor asked EOP to produce 29 additional categories of allegedly relevant documents.  Ex. G, sched. A, at 4-6.

By email dated February 3, 2014, defendant O'Connor advised the United States of his intention to issue third-party deposition subpoenas to five current officials of USDA and to one

former official of USDA. Ex. H at 1. By email dated February 10, 2014, plaintiff advised the

United States of her intention to issue third-party deposition subpoenas to two of the five current

officials of USDA to whom defendant O'Connor proposes to issue such subpoenas; to issue a

third-party deposition subpoena to the former official of USDA to whom defendant O'Connor

proposes to issue such a subpoena; and to issue third-party deposition subpoenas to four other

former officials of USDA. Ex. I at 1. Both plaintiff and defendant O'Connor have reserved the

right to issue third-party deposition subpoenas to other current or former federal officials. *Id.*;

Ex. H at 1.

## DISCUSSION

I.      **THE THIRD-PARTY SUBPOENAS OF PLAINTIFF AND DEFENDANT
        O'CONNOR ARE OBJECTIONABLE BECAUSE THEY SEEK DOCUMENTS
        AND INFORMATION HAVING NO RELEVANCE TO THIS ACTION.**

A litigant is permitted by Fed. R. Civ. P. 26(b)(1) to "obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense." "Generally speaking,

'relevance' for discovery purposes is broadly construed." *Food Lion, Inc. v. United Food &

Comm'l Workers*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). However, "the relevance standard of

Rule 26 is not without bite." *Id.* Although

> "[t]he boundaries defining information that is relevant to the subject matter
> involved in the action are necessarily vague and it is practically impossible to
> state a general rule by which they can be drawn," it is also true that "[n]o one
> would suggest that discovery should be allowed of information that has no
> conceivable bearing on the case."

*Id.* (quoting Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice &

Procedure* § 2008 (1994)). For that reason, a litigant who "gives no sufficient reason to believe

that discovery would aid her case" has no right to discovery. *Reshard v. Lahood*, 358 F. App'x

196, 197 (D.C. Cir. 2009). Nor is a litigant permitted to "'roam in the shadow zones of

7

relevance and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Food Lion*, 103 F.3d at 1012-13 (quoting *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)) (internal quotation marks omitted).

Under the law of the District of Columbia, which may govern this action, a plaintiff must show the following to succeed on a claim of defamation:

> "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm."[6]

*Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013) (quoting *Blodgett v. Univ. Club*, 930 A.2d 210, 222 (D.C. 2007)).  "To succeed on a claim of false light invasion of privacy, a plaintiff must show '(1) publicity (2) about a false statement (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person.'"  *Id.* at 188 (quoting *Kitt v. Capital Concerts*, 742 A.2d 856, 859 (D.C. 1999)).  "To succeed on a claim of intentional infliction of emotional distress, a plaintiff must show '(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'"  *Id.* at 189 (quoting *District of Columbia v. Tulin*, 994 A.2d 788, 800 (D.C. 2010)).

In this case, no third-party subpoena that plaintiff or defendant O'Connor has issued or proposes to issue to the United States seeks any document or information having any relevance to any claim that plaintiff makes in this action or to any defense that any defendant has asserted.

---

[6] This action was brought in the District of Columbia by a resident of Georgia against defendants residing in California and Georgia.  ECF No. 1 at 2; ECF No. 1-2 ¶¶ 9, 12.  A choice-of-law question thus exists in this action. The United States takes no position on that issue.

It thus makes no difference how plaintiff came to be state director of USDA for Georgia, *see* Ex. F, sched. A at 4 (Items 3, 5-7, 16-26, 29); Ex. G, sched. A at 4, 6 (Items 3-5, 9-12); what her personal history has been, *see* Ex. F, sched. A at 4-5 (Item 8-10, 12-13, 27-28, 30); Ex. G, sched. A at 5 (Item 16); or what her record was as state director.  *See* Ex. E, sched. A at 4 (Items 6-8); Ex. F, sched. A at 5 (Item 12).  Neither does it make any difference what any federal official said about plaintiff to anyone at any time, *see* Ex. F, sched. A at 4-7 (Items 3-4, 16-26, 29, 31-32, 40, 44); Ex. G, sched. A at 4-6 (Items 6-12, 23, 27-29), or what plaintiff and any federal official ever said to each other.  *See* Ex. F, sched. A at at 7 (Item 41); Ex. G, sched. A at 6 (Item 26).

The sole actions of the United States that have any potential relevance to this action are the offers of reemployment that Secretary Vilsack made to plaintiff following her resignation from USDA.  Ex. A at 1, 2.  Either offer, if accepted, would have prevented plaintiff from losing any income because of her resignation.  Plaintiff has admitted that Secretary Vilsack made those offers.  *See id.* at 2.  For that reason, the United States should not be required to respond to any of the third-party subpoenas that plaintiff or defendant O'Connor has issued or proposes to issue to it in this action.

## II. THE THIRD-PARTY SUBPOENAS OF PLAINTIFF AND DEFENDANT O'CONNOR ARE OBJECTIONABLE BECAUSE THEY SEEK TO EMBROIL THE UNITED STATES IN A CAMPAIGN OF DISCOVERY INAPPROPRIATE TO ITS ROLE AS A THIRD-PARTY WITNESS.

Federal Rule of Civil Procedure 45(d)(1) provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  The "'undue burden' standard" of Rule 45(d)(1) causes "'concern for the unwanted burden thrust upon non-parties'" to be a "'factor entitled to special weight'" in determining the enforceability of third-party subpoenas. *Watts v.*

9

*SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (quoting *Cusamano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)).  That concern is at its zenith where, as here, third-party subpoenas are directed to the United States.  In such cases, the court "must properly accommodate 'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'"  *Id.* (quoting *Exxon Shipping Co. v. Dep't of the Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

        This case is not a complex piece of corporate litigation.  It is, instead, a common-law tort action in which all of the parties are individuals and few material facts, if any, are subject to dispute.  Despite the relative simplicity of this action, plaintiff and defendant O'Connor have issued extremely broad and burdensome third-party document subpoenas to USDA and EOP that seek, in the aggregate, 83 categories of documents that are irrelevant to this litigation.  Ex. E, sched. A at 4-5; Ex. F, sched. A at 4-7; Ex. G, sched. A at 4-6.  They have also announced their intention to issue third-party deposition subpoenas to a total of five current officials of USDA and have reserved the right to issue third-party deposition subpoenas to an unlimited number of additional federal officials.  Ex. H at 1; Ex. I at 1.  By doing these things, plaintiff and defendant O'Connor have triggered "'the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.'"  *See Watts*, 482 F.3d at 509 (quoting *Exxon Shipping*, 34 F.3d at 779.  For that reason, the United States should not be required to respond to any of the third-party subpoenas that plaintiff and defendant O'Connor have issued or propose to issue to it in this action.

10

III.   **THE THIRD-PARTY SUBPOENAS OF PLAINTIFF AND DEFENDANT O'CONNOR ARE OBJECTIONABLE BECAUSE THEY SEEK DISCOVERY FROM EOP WITHOUT MEETING THE HIGH BURDEN REQUIRED BY CONTROLLING LAW.**

The Supreme Court has firmly established that sweeping civil discovery demands like the third-party subpoena that defendant O'Connor has issued to EOP are generally inappropriate and must be scrutinized more carefully than ordinary civil discovery demands.  The Office of the President occupies a "'unique position in the constitutional scheme'" and is thus "'owed'" "'high respect.'" *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 382, 385 (2004) (quoting *Clinton v. Jones*, 520 U.S. 681, 698, 707 (1997)) (internal quotation marks omitted).  Because "'a President's communications and activities encompass a vastly wider range of sensitive material than would be true of any ordinary individual,'" the courts must "'afford Presidential confidentiality the greatest protection consistent with the fair administration of justice'" and "give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties."  *Id.* at 381, 382 (quoting *United States v. Nixon*, 418 U.S. 683, 715 (1974)) (internal quotation marks omitted).  Accordingly, the burdens imposed on EOP by overbroad discovery demands like the third-party subpoena that defendant O'Connor has issued to EOP are an especially "important factor" weighing heavily against their enforcement."  *Id.* at 385.  Avoiding those burdens is sufficiently important that the United States is permitted to challenge discovery demands issued to EOP without "invoking executive privilege with sufficient specificity" or making other "particularized objections."  *Id.* at 388.

In this case, Secretary Vilsack has stated publicly that the decision to ask plaintiff to resign from her position as state director of USDA RD for Georgia was his and his alone and that

"[t]here was no pressure from the White House."  Ex. C at 1-2.  The White House has said the

same thing.  Ex. D at 1.  Despite that fact, defendant O'Connor has issued a third-party subpoena

to EOP requesting the production of 29 categories of documents, including

> All communications and documents sent [to, from, or] among members of the
> White House staff, including but not limited to President Barack Obama, Rahm
> Emanuel, Robert Gibbs, Jim Messina, Michael A. Blake, Christopher Lu, Chris
> Reid, Tom Gavin, Reid Cherlin, Valerie E. Green and Kevin Washo, relating to
> Shirley Sherrod from July 25, 2008 to present

and

> All communications and documents, including but not limited to briefing
> materials, notes and minutes, reflecting information prepared for or
> communicated to President Obama relating to Shirley Sherrod

and

> All communications with any other individual, government agency, or
> organization relating to Shirley Sherrod from July 25, 2008, to present.

Ex. G, sched. A, at 4-6 (Items 6-7, 12, 27).  At no time, however, has defendant O'Connor

provided any justification for seeking to thrust EOP into "vexatious litigation that might distract

it from the energetic performance of its constitutional duties" and denying "'Presidential

confidentiality the greatest protection consistent with the fair administration of justice.'"  *See*

*Cheney*, 542 U.S. at 382 (quoting *Nixon*, 418 U.S. at 715).  For that reason, the United States

should not be required to respond to the third-party subpoena that defendant O'Connor has

issued to EOP.

12

**IV.     DESPITE ITS OBJECTIONS TO THE THIRD-PARTY SUBPOENAS OF
PLAINTIFF AND DEFENDANT O'CONNOR, THE UNITED STATES HAS
SOUGHT TO COOPERATE BY VOLUNTARILY PRODUCING CERTAIN OF
THE DOCUMENTS COVERED BY THOSE SUBPOENAS.**

1.  Plaintiff has asked USDA to produce

All Documents Relating To how You evaluate and track USDA employees
holding the position of State Director for Rural Development, including but not
limited to performance reviews, personnel files, staff evaluations, and progress
reports regarding Mrs. Sherrod during the time period she held her position as
the Georgia State Director for Rural Development from August 17, 2009 until
July 19, 2010.

Ex. E, sched. A at 4 (Item 7).  Defendant O'Connor has made a similar request to USDA.  *See*

Ex. F, sched. A at 5 (Item 12).  As a courtesy, the United States has responded to these requests

by advising plaintiff and defendant O'Connor that plaintiff did not serve as state director of

USDA RD for Georgia for a long enough period to receive a performance appraisal report.

2.  Defendant O'Connor has asked USDA to produce "All employment or human

resources files, communications and documents from July 25, 2009 to present relating to Shirley

Sherrod."  Ex. F, sched. A at 4 (Item 11).  As a courtesy, the United States has advised plaintiff

and defendant O'Connor that it is prepared to produce plaintiff's official personnel file (OPF),

provided that an appropriate Privacy Act protective order is entered.  The United States has

drafted such an order and has provided it to plaintiff and defendant O'Connor for their review.[7]

3.  Plaintiff alleges that her starting annual salary as state director of USDA RD for

Georgia was $111,000.  ECF No. 1-2 ¶ 20.  Despite so alleging, plaintiff has asked USDA to

produce "All Documents Reflecting the salary Shirley Sherrod was paid during her tenure

as the Georgia State Director for Rural Development for the USDA."  Ex. E, sched. A at 4

---

[7] The United States contemplates withholding from the OPF any material that would be subject to redaction under
Fed. R. Civ. P. 5.2(a).

(Item 4).  As a courtesy, the United States has advised plaintiff and defendant O'Connor that

plaintiff's OPF contains documents responsive to the request.

      4.  Plaintiff has asked USDA to produce

> All Documents Relating To  the  performance of  Georgia's USDA Rural
> Development agency, including but not limited to the Georgia USDA Rural
> Development  Annual Report for the  2008-2009 fiscal year, as well as for  the
> 2009-2010 fiscal year, and comparisons of the Georgia USDA Rural
> Development  agency to the USDA Rural Development  agencies of other states.

Ex. E, sched. A at 4 (Item 8).  As a courtesy, documents responsive to this request were

produced to plaintiff and to defendants Breitbart and O'Connor on February 4, 2014.

      5.  Defendant O'Connor has asked USDA to produce "All reports prepared by the White

House or the USDA relating to the background and qualifications of Shirley Sherrod in

connection with her July 25, 2009 appointment as Georgia Director of Rural Development,

including but not limited to the document commonly referred to as a 'vetting report.'"  Ex. F,

sched. A at 4 (Item 7).  Defendant O'Connor has made a similar request to EOP.  Ex. G, sched.

A at 4 (Item 5).  The vetting report to which defendant O'Connor refers is a document

concerning plaintiff that the White House prepared prior to her appointment to be state director

of RD for Georgia.  The United States has objected to producing the report on the grounds that

the report is irrelevant to this action and potentially subject to claim of privilege.  The request

that EOP produce the report is also objectionable in light of the heightened standard that *Cheney*

establishes for obtaining civil discovery from EOP.  *See* 542 U.S. at 381, 382, 385, 388.

      6.  In responding to a FOIA appeal to USDA unrelated to this action, USDA has

determined to conduct electronic searches for emails pertaining to plaintiff.  The searches that

USDA proposes to conduct cover the period June 1-October 31, 2010, and consist of a search of

USDA RD archives, using seven search terms, for emails of three current or former officials of

USDA, including plaintiff; a search of exchange server backups, using eight search terms, for emails of 37 current or former officials of USDA, including Secretary Vilsack; and a search, using the search term "Sherrod," of the correspondence files of the Office of Executive Correspondence.

The United States has proposed, as a courtesy, to produce the documents located as a result of these searches to plaintiff and defendant O'Connor.  Defendant O'Connor has responded to that proposal by proposing a set of alternative searches broader in scope than the United States considers necessary or appropriate.  No agreement on the searches thus has been reached and no such searches have been conducted.

## CONCLUSION

The United States looks forward to discussing any and all of the issues raised in this memorandum at the status conference the Court has scheduled

<div style="margin-left:40%">

Respectfully submitted

STUART F. DELERY
Assistant Attorney General
JOHN R. TYLER
Ass't Br. Dir., Dep't of Justice, Civ. Div.

s/ David M. Glass
DAVID M. GLASS, DC Bar 544549
Sr. Trial Counsel, Dep't of Justice, Civ. Div.
20 Mass. Ave., N.W., Room 7200
Washington, D.C.  20530-0001
Tel: (202) 514-4469/Fax: (202) 616-8470
E-mail: david.glass@usdoj.gov

</div>

Dated: February 20, 2014                    Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2014, I served the within memorandum and the exhibits to it on all counsel of record by filing them with the Court by means of its ECF system.

s/ *David M. Glass*