UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHIRLEY SHERROD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-00477 (RJL) |
| | ) | |
| SUSANNAH BREITBART, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANT LARRY O'CONNOR'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF
THE UNITED STATES TO QUASH CERTAIN SUBPOENAS ISSUED TO
THE SECRETARY OF AGRICULTURE**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

STATEMENT OF FACTS ...................................................................................................3

ARGUMENT ......................................................................................................................9

    A.    SECRETARY VILSACK'S TESTIMONY MANIFESTLY IS RELEVANT AND ESSENTIAL ............9

    B.    SECRETARY VILSACK'S PUBLIC STATEMENTS REGARDING MRS. SHERROD ARE
           NOT AN APPROPRIATE SUBSTITUTION FOR AN ORAL DEPOSITION WHERE HE CAN
           BE EXAMINED REGARDING MRS. SHERROD, HER SPEECH, AND HER
           EXPLANATIONS BEFORE SHE RESIGNED .........................................................................12

    C.    ALTERNATIVE DISCOVERY PROCEDURES ARE INSUFFICIENT MEANS TO OBTAINING
           THE NECESSARY INFORMATION FROM SECRETARY VILSACK .........................................14

CONCLUSION ...................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Am. Broad. Cos., Inc. v. United States Information Agency,*
  599 F. Supp. 765, 769 (D.D.C. 1984)..................................................................3, 14

Brown v. Petrolite Corp.,
  965 F.2d 38, 43 (5th Cir. 1992) ...........................................................................10

Detoy v. City and County of San Francisco,
  196 F.R.D. 362, 369 (N.D. Cal. 2000)..................................................................11

*Energy Capital Corp. v. United States,*
  60 Fed. Cl. 315, 318-19 (Fed. Cl. 2004)...............................................................15

Fin. Gen. Bankshares, Inc. v. Lance,
  80 F.R.D. 22, 23 (D.D.C. 1978)........................................................................3, 14

*Gibson v. Carmody,*
  No. 89 Civ. 5358, 1991 WL 161087, *1 (S.D.N.Y. 1991) ......................................16

*Mill-Run Tours, Inc. v. Khashoggi,*
  124 F.R.D. 547, 549 (S.D.N.Y. 1989) ...................................................................15

Murray v. United States Department of the Treasury,
  Civil Action No. 09-cv-15147, 2010 WL 1980850 (E.D. Mich. 18, 2010)..............11

Payne v. District of Columbia,
  859 F. Supp. 2d 135, 136 (D.D.C. 2012)................................................................9

Schlagenhauf v. Holder,
  379 U.S. 104, 114-15 (1964) ...............................................................................14

*Schoen v. Wash. Post,*
  246 F.2d 670, 672 (D.C. Cir. 1957)......................................................................10

Simon v. Shearson Lehman Bros., Inc.,
  895 F.2d 1304, 1316 (11th Cir. 1990) ..................................................................10

Simplex Time Recorder Co. v. Secretary of Labor,
  766 F.2d 575, 587 (D.C. Cir. 1985).......................................................................11

Strang v. U.S. Arms Control & Disarmament Agency,
  864 F.2d 859 (D.C. Cir. 1989) .............................................................................13

*United States v. Wal-Mart Stores*,
  2002 WL 562301, at *2 (D. Md. Mar. 29, 2002).........................................................................9

*Zinda v. La.-Pac. Corp.*,
  409 N.W.2d 436, 442 (Wis. Ct. App. 1989), aff'd in part, rev'd in part on other grounds,
  440 N.W.2d 548 (Wis. 1989) ....................................................................................................10

## INTRODUCTION

The gravamen of Plaintiff Shirley Sherrod's case is that Defendants "selectively edited" her speech and, as a consequence, she was forced to resign from her appointed position at the United States Department of Agriculture ("USDA").  USDA Secretary Thomas Vilsack steadfastly has maintained that the decision to terminate Mrs. Sherrod on July 19, 2010, hours after portions of her speech were made public, was his and his alone.  The next morning, Mrs. Sherrod appeared live on CNN and told a different story.  She claimed the White House forced her out.  She also explained that *before* she was fired, she pleaded with her USDA bosses to listen to the entire tape of her speech.  When asked why she was let go if, as she claimed, the administration had been told that the video released the day before omitted key context, she said "They were not interested in hearing the truth.  No one wanted to hear the truth."[1]

The evidence confirms that the USDA had been made aware of the content and context of Mrs. Sherrod's speech at least four days before the controversy erupted on July 19.  Indeed, Secretary Vilsack was advised hours *before* he ordered her resignation that Mrs. Sherrod's remarks about her initial reluctance to assist a white farmer occurred before she was a public official, that she did assist the white farmer, and that, in Mrs. Sherrod's view the excerpts of her speech that surfaced earlier that day did not fairly characterize her views on race.[2]  This evidence contradicts the suggestion that he did not know Mrs. Sherrod's side of the story.

---

[1] Forcing Ga. Official to Resign Over YouTube Clip was the Right Call, Agriculture Chief Says, FOXNEWS.COM (July 20, 2010), available at http://www.foxnews.com/politics/2010/07/20/ex-ag-official-says-video-showing-white-farmer-story-excludes-key-context/.

[2] E-mail from Dallas Tonsager to Secretary Vilsack, July 19, 2010 4:04 p.m., *see* FOIA_000847, attached as Exhibit A.  In addition, the video excerpt in the Blog Post itself makes clear that Mrs. Sherrod assisted the white farmer in securing legal representation and that her speech was discussing what she considered to be her personal transformation beyond race.  Big Government, *NAACP Bigotry in their ranks*, YOUTUBE (July 19, 2010), http://www.youtube.com/watch?v=t_xCeItxbQY (also submitted to this Court as Exhibit 4 to Def. Larry O'Connor's Mot. To Compel Compliance With Subpoenas Directed To The United States Department Of Agriculture

In the face of this record, the United States Government seeks to shield the truth, arguing the parties have not shown that Secretary Vilsack is likely to have information relevant to this case and that, to the extent he has relevant information, it is available entirely from his public statements.  Secretary Vilsack unquestionably has relevant information not available from any other source about the facts that were considered and the reasons behind Mrs. Sherrod's removal from her federally appointed position and his subsequent offer to reinstate her.  His testimony regarding what he knew about Mrs. Sherrod, her speech, and her explanations before she submitted her resignation is central to the issue of whether Mrs. Sherrod can meet her burden in proving that Andrew Breitbart and Mr. O'Connor were the legal cause of her "forced resignation from the USDA,"[3] and whether Mrs. Sherrod is "barred from recovery for damages caused by the acts of others," as Mr. O'Connor has asserted as an affirmative defense.[4]

Secretary Vilsack's knowledge of this information breaks the causal link critical to Mrs. Sherrod's case and, instead, establishes that Mrs. Sherrod was not fired because of any misimpression on the part of her superiors about her speech allegedly created by Mr. Breitbart or Mr. O'Connor.  Testimony from Secretary Vilsack not only is relevant, it is critical for Defendants to prove what actually happened on July 19, 2010 and why any monetary, reputational, or emotional damages allegedly suffered by Mrs. Sherrod were not proximately caused by Mr. Breitbart or Mr. O'Connor.

The Government's fallback proposal for deposition by written questions is prejudicial to Defendants.  Among those involved in the deliberations, Secretary Vilsack has unique and

---

And The Executive Office Of The President Of The United States (March 3, 2014) [Dkt. No. 93-6]).  All documents produced pursuant to a FOIA request and cited herein with Bates-stamped numbers beginning with "FOIA" are attached at Exhibit A and referred to herein by their Bates-stamp numbers.

[3] Complaint ("Compl.") [Dkt. No. 1, Exhibit B], p. 36, Count 1.

[4] Answer of Defendant Larry O'Connor [Dkt. No. 38] ("O'Connor Answer"), p. 13, Aff. Def. 18.

extensive personal knowledge of the factors and reasons informing the decision to demand Mrs.

Sherrod's resignation and to extend her offers of re-employment. Carefully tailored written

responses by the Department of Justice and Secretary Vilsack's aides cannot substitute for the

Secretary's fulsome, spontaneous, and unvarnished testimony about the reasons, motives, and

deliberations culminating in the decision to demand Mrs. Sherrod's resignation. Furthermore,

given the Government's heavily redacted, incomplete disclosures, it is essential that Defendants

be afforded the opportunity to ask probing follow-up questions in the course of Secretary

Vilsack's live testimony. Equally essential is Defendants' ability to examine Secretary Vilsack

with reference to the e-mails and other documents he had in the hours leading up to his decision

to escalate her status from "administrative leave" to "forced resignation." This Court has

recognized time and again that, as a general matter, written questions are not "an adequate

substitute" for oral depositions and it has rejected the notion that high-ranking officials should

only be questioned by written questions where such a restriction would "frustrate any meaningful

discovery."[5]

The circumstances here truly are extraordinary. The Government's efforts to restrict

Secretary Vilsack's involvement to his prior public statements or future, carefully crafted

responses must be rejected.

## STATEMENT OF FACTS

On the morning of July 19, 2010, BigGovernment.com published a blog post entitled

*Video Proof: The NAACP Awards Racism—2010* containing two video excerpts of a speech

given by Shirley Sherrod, who was then serving as the Director of Rural Development for

Georgia at the USDA, along with commentary by Andrew Breitbart expressing his opinions

---

[5] *Fin. Gen. Bankshares, Inc. v. Lance*, 80 F.R.D. 22, 23 (D.D.C. 1978); *Am. Broad. Cos., Inc. v. United States Information Agency*, 599 F. Supp. 765, 769 (D.D.C. 1984).

about her speech (the "Blog Post").  The main point of the Blog Post was the hypocrisy of the NAACP, which just days before had condemned the Tea Party for tolerating supposed racism within its ranks.  The first video clip embedded in the Blog Post, an excerpt of Mrs. Sherrod's racially charged remarks to an NAACP audience in Coffee County, Georgia,[6] was offered to illustrate the hypocrisy of the NAACP and to criticize the NAACP for tolerating apparent racism at one of its own events.  In this first excerpt, Mrs. Sherrod explains to the audience how she initially was reluctant to give the "full force" of her assistance to a troubled farmer—because he was white—and also included her statement that she later recognized that it was about the "poor versus those who have."  This same video excerpt also shows audience members verbally expressing their approval as Mrs. Sherrod states, referring to the white farmer, "What he didn't know while he was taking all that time trying to show me he was superior to me was I was trying to decide just how much help I was going to give him."  In the second video excerpt, Mrs. Sherrod encourages black men and women to apply for jobs at the USDA, claiming in substance that no one ever gets fired from a government job.

According to Mrs. Sherrod, at around 6:30 on the evening of July 19, her boss, Cheryl Cook, called Mrs. Sherrod, who was driving at the time, to tell her that the White House demanded her immediate dismissal and to ask her to pull over to the side of the road to submit her resignation.[7]  More than two hours before Ms. Cook instructed Mrs. Sherrod to pull off the road and e-mail her resignation, Ms. Cook and her boss, Dallas Tonsager, e-mailed Secretary Vilsack and his top advisors explaining that "this piece of tape shows only one small part of a longer story she told of her personal transformation beyond race, and is about a farmer who came

---

[6] *See* Dkt. No. 93-6, Exhibit 4.
[7] Shirley Sherrod, *A Courage to Hope* (Atria 2012) at 148 ("Mrs. Sherrod's Book") ("Cheryl had told me it was the White House that wanted me out.  Vilsack always took full responsibility, but that didn't satisfy me, because surely there was more to the story."); *see also* FOIA_001345.

to see her in 1986 when she was working as a farm advocate."[8]

**From:** Tonsager, Dallas
**To:** ▓▓▓ Exemption   (b)(6)
**Cc:** Ross, Karen -ChiefOfStaff; Jett, Carole; Washo, Kevin
**Sent:** Mon Jul 19 16:04:06 2010
**Subject:** Shirley Sherrod

Dear Mr. Secretary

We have just seen the video of Georgia State Director Shirley Sherrod and are deeply disturbed.  Cheryl has put her on administrative leave pending a full investigation.  Of course, the video suggests that this is about a farm loan, and those programs were transferred to the Farm Service Agency in 1995.

Shirley explained to Cheryl that this piece of tape shows only one small part of a longer story she told of her personal transformation beyond race, and is about a farmer who came to see her in 1986 when she was working as a farm advocate.  The rest of the story apparently explains how she came to assist this farmer and many other white farmers during this time period.  She said there is a copy of the entire speech, and Cheryl asked her to provide it as quickly as possible.

Dallas and Cheryl

Dallas Tonsager|Under Secretary

In addition to Secretary Vilsack, this e-mail was sent to his top advisors:  his Chief of Staff Karen Ross, his deputy Chief of Staff Carole Jett, and the USDA liaison to the White House Kevin Washo.  Ms. Ross forwarded the e-mail to Secretary Vilsack again, copying Krysta Harden, a USDA staff member who was traveling with the Secretary at the time, to be sure he had this information.[9]

Mr. Tonsager also followed up at 5:30 p.m. with an e-mail to Secretary Vilsack.  Despite Mrs. Sherrod's explanation that he received earlier, Mr. Tonsager stated that "he was shocked by the comments made by State Director Shirley Sherrod and posted on the internet."[10]  Secretary Vilsack responded, "Dallas - she has offered her resignation which is appropriate."[11]  The remainder of his e-mail is redacted under claim of deliberative process privilege.

---

[8] FOIA_00847.  In addition, the video excerpt in the Blog Post itself Sherrod explains that she ultimately helped the white farmer and that she came to recognize that it was about the "poor versus those who have."  Dkt. No. 93-6, Exhibit 4.
[9] FOIA_000847.
[10] FOIA_002790.
[11] *Id.*



This was not the first time that Mrs. Sherrod had told her superiors the context and content of her speech to the NAACP. Four days earlier, on July 15, Secretary Vilsack, Deputy Secretary Kathleen Merrigan and Mrs. Sherrod's deputy director Donnie Thomas, were copied on an e-mail containing a link to a video clip on YouTube that showed Mrs. Sherrod making her racially charged speech that is the subject of this lawsuit. The video, which was similar to the one concerning the white farmer embedded in the Blog Post on July 19, 2010, contained Mrs. Sherrod's statements that she was reluctant to give "the full force" of her assistance to a troubled white farmer, but that she later decided to help him.[12] In e-mail exchanges that Mrs. Sherrod copied to Secretary Vilsack and the other USDA officials, Mrs. Sherrod claimed that the video was taken out of context, emphasized that she had helped the white farmer, and noted that the

---

[12] The video clip had been uploaded to YouTube by Mr. O'Connor, who had intended to set the video as "private" for viewing only by his colleagues. But unbeknownst to Mr. O'Connor at the time, he inadvertently made it available for public viewing. There were approximately 50 views of the video before Mr. O'Connor restricted public access.

anecdote in the video clip referred to events from more than twenty years before.[13]

---

---------- Forwarded message ----------
From: **Sherrod, Shirley - Athens, GA** <shirley.sherrod@ga.usda.gov>
Date: Thu, Jul 15, 2010 at 4:07 PM
Subject: Re: Regarding Ms. Sherrod's Comments at the NAACP 20th Annual Freedom Fund Banquet
To: "georgeko@gmail.com" <georgeko@gmail.com>
Cc: "Tom.Vilsack@usda.gov" <Tom.Vilsack@usda.gov>, "Merrigan, Kathleen (OSEC)"
<Kathleen.Merrigan@usda.gov>, "senator@isakson.senate.gov"
<senator@isakson.senate.gov>, "webmail@chambliss-iq.senate.gov" <webmail@chambliss-
iq.senate.gov>, "Thomas, Donnie - Athens, GA" <Donnie.Thomas@ga.usda.gov>

My words were taken out of context. I told about something that happened in 1986 when I was faced with
having to help a white farmer save his farm. When so many black farmers were losing their. My point was
that I initially did not do all that I could but in the process realized it was not about black versus white but
about poor people or those who have versus those who do not.
If they will use all that I said you see that I talked about what I did to save that white farmers farm and from
there went to help hundreds of other white farmers

I use the story to try to get people to move beyond race and work together

I feel deeply hurt that someone would take my words out of context and try to make them mean something
else

My record of work for others for 45 years will show my love for people and for fairness

Shirley Sherrod
---------------------------
Sent using BlackBerry

---

Ms. Cook received Mrs. Sherrod's resignation e-mail on July 19, 2010 at 6:55 p.m. in

which Mrs. Sherrod warned that she would broadcast what her superiors already knew; namely,

that her remarks referred to events that occurred years before she became a USDA official, that

she ultimately assisted the white farmer, and that she was telling a longer story about her

personal transformation beyond race.[14] Ms. Cook immediately forwarded this e-mail to Mr.

Washo, the USDA's White House Liaison,[15] who forwarded a copy of it to Ms. Harden, the

USDA official who was traveling with Secretary Vilsack.[16]

---

[13] Mrs. Sherrod also received an e-mail from another individual who had seen the video clip on
July 15, 2010.  Mrs. Sherrod forwarded the individual's e-mail and her response to Abebe
Yeshimebet, a special assistant in the office of her supervisor in Washington, Cheryl Cook, on
July 15, 2010.  FOIA_00001094; BNN_00000706, attached as Exhibit B.
[14] FOIA_000826.
[15] FOIA_000826.
[16] *See* Defendant Larry O'Connor's Sealed Motion for Leave to File Document Under Seal [Dkt.
No. 118] at Ex. A-3.

The next day, Mrs. Sherrod took to the airwaves to broadcast her story, as she warned she would do.  She criticized the USDA and the White House on CNN for firing her *after* she pleaded with them to listen to the tape of her entire speech:   "I told them get the whole tape and look at the whole tape and look at how I tell people we have to get beyond race and start working together."[17]  USDA Communications Director Chris Mather acknowledged to a Washington Post reporter what the USDA's internal e-mails made clear:  that "She did tell her side but it didn't matter."[18]  Proving that it "didn't matter," Secretary Vilsack doubled-down in a second public statement standing by his decision *after* Mrs. Sherrod broadcast her story on national television. He stated that he demanded her resignation for two reasons:  first, because the controversy would make it more difficult for the USDA to move forward on correcting past civil rights injustices at the USDA, and second, "rightly or wrongly," the controversy would cause situations where her decisions would be called into question.[19]

Even after seeing Mrs. Sherrod's resignation e-mail and the explanations of her remarks provided to him by his staff, Secretary Vilsack nevertheless stated that he wanted an e-mail sent "to remind every employee that as a USDA employee they have a unique and important individual responsibility to represent USDA well in all their official actions, statements, and public presentations and that all of us are held to a high standard."[20]

A month later, at a press conference with Mrs. Sherrod standing by his side, Secretary Vilsack was asked why he had initially "stood by the removal" even after Mrs. Sherrod had broadcast her story.  Secretary Vilsack dodged the question, dismissively claiming "I didn't avail myself of the full range of advice and counsel" before reiterating what had become the

---

[17] FOIA_000972.
[18] FOIA_001403.
[19] FOIA_000938.
[20] FOIA_001449.

Government's disingenuous public mantra:  "her comments were taken totally and completely out of context."[21]

## ARGUMENT

### A.  Secretary Vilsack's Testimony Manifestly Is Relevant and Essential

The Government concedes that Secretary Vilsack's position as a high-ranking executive department official does not shield him from ever being deposed, but contends that his deposition should not be permitted "in the absence of a persuasive showing that he is likely to have information relevant to any party's claims or defenses."  Br. at 9.  The deposition of Secretary Vilsack meets this standard by a wide margin.[22]  Secretary Vilsack's personal knowledge of the factors driving the deliberations culminating in his demand that Mrs. Sherrod resign is directly relevant to Mrs. Sherrod's allegation that Andrew Breitbart and Larry O'Connor caused her harm.  Mrs. Sherrod must prove that alleged inaccuracies in the Blog Post were the legal cause of her "forced resignation from the USDA."[23]  Secretary Vilsack's knowledge of Mrs. Sherrod's side of the story is certainly relevant to whether Mrs. Sherrod can

---

[21] Transcript, USDA Press Conference, July 21, 2010 ("July 21 Press Conference Transcript"), available at http://www.usda.gov/wps/portal/usda/usdahome?contentid=2010/07/0383.xml &navid=TRANSCRIPT&navtype=RT&parentnav=TRANSCRIPTS_SPEECHES&edeployment _action=retrievecontent.

[22] A deposition of a high ranking government official is appropriate where the official has "*some personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere.*"  *Payne v. District of Columbia*, 859 F. Supp. 2d 135, 136 (D.D.C. 2012) (internal quotation marks omitted) (emphasis in original); *see also United States v. Wal-Mart Stores*, 2002 WL 562301, at *2 (D. Md. Mar. 29, 2002).  These factors are present in this case.

[23] Compl., p. 36, Count 1.  The Government disingenuously argues that Mrs. Sherrod has not "join[ed]" Secretary Vilsack as a defendant," "claimed that he is liable to her," or "alleged that he has information about the publication of defendant Breitbart's blog post."  Br. at 9.  None of that matters.  She alleges that her "forced resignation" caused her damages for which *Defendants* are liable.  She also claims that she was fired because Defendants "selectively edited" her speech. Secretary Vilsack's public statements notwithstanding, every piece of evidence since revealed by the Government demonstrates otherwise.

meet that burden, as well as Mr. O'Connor's defense that Mrs. Sherrod is "barred from recovery for damages caused by the acts of others."[24]

As the D.C. Circuit has held, there is "no doubt" that a defamation plaintiff must show that her harm "was the natural and proximate consequence of the alleged inaccuracies contained in the article, and not the result of other causes[.]" *Schoen v. Wash. Post*, 246 F.2d 670, 672 (D.C. Cir. 1957).[25]  Thus, if Mrs. Sherrod was removed from her federally appointed position for reasons other than "alleged inaccuracies" in the Blog Post then Mrs. Sherrod cannot meet her burden in proving that Mr. Breitbart and Mr. O'Connor were the cause of her alleged damages.

The internal e-mails suggest that Mrs. Sherrod was removed from her federally appointed position for reasons other than "alleged inaccuracies" in the Blog Post.  Secretary Vilsack and his top advisors understood all of the relevant facts better than anyone but it "didn't matter."[26]  It did not matter that Mrs. Sherrod's tale of her reluctance to help a farmer because he was white concerned events that occurred before she was a public official, or that she ultimately assisted the white farmer, or that, according to Mrs. Sherrod, "this piece of tape shows only one small part of a longer story she told of her personal transformation beyond race."  The Government still immediately forced her to resign.  Indeed, even after watching the full video of Mrs. Sherrod's speech, the candid opinions expressed behind closed doors within the administration were not

---

[24] O'Connor Answer, p. 13, Aff. Def. 18.

[25] *See also, e.g.*, *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1316 (11th Cir. 1990) (applying California law) (finding that defamation plaintiff terminated from job bears burden of proving "that the slanderous statement was both a factual cause and a proximate cause of [plaintiff's] termination"); *Brown v. Petrolite Corp.*, 965 F.2d 38, 43 (5th Cir. 1992) (holding that a defamation plaintiff must prove that defamatory language proximately caused his or her injury); *Zinda v. La.-Pac. Corp.*, 409 N.W.2d 436, 442 (Wis. Ct. App. 1989) (holding that it is plaintiff's "burden to show that the loss was attributable to the defamation, not to [his] wrongful discharge"), *aff'd in part*, *rev'd in part on other grounds*, 440 N.W.2d 548 (Wis. 1989).

[26] FOIA_001403.

that the remarks contained in the Blog Post were misleading or taken out of context.  To the

contrary, the reactions were similar to the opinions expressed in the Blog Post.[27]

This case is, therefore, distinguishable from the cases cited by the Government

concerning depositions of high-ranking officials being disfavored.  For example, the Government

cites *Murray v. United States Department of the Treasury*, Civil Action No. 09-cv-15147, 2010

WL 1980850 (E.D. Mich. 18, 2010) for the proposition that high-ranking officials should not be

deposed when their personal knowledge is merely "of the subject matter of [an] action," as

opposed to being "relevant to the claims or defenses in the action."  *Id.* at *3.  In *Murray v.*

*United States Department of the Treasury*, the plaintiff "simply failed to demonstrate the

relevance [of Secretary of Treasury Timothy Geithner's deposition] to the claims at issue."  *Id.* at

*5.  By contrast, Secretary Vilsack has information that is directly relevant to the claims and

defenses in this action, as demonstrated above.  Likewise, the clear relevance of the information

considered and the reasons behind Mrs. Sherrod's removal from her federally appointed position

distinguishes this case from *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 587

(D.C. Cir. 1985), where the plaintiff sought to depose "top executive department officials" about

"general enforcement proceedings[.]"[28]

Tacitly acknowledging that Secretary Vilsack has information that is directly relevant to

the claims and defenses in this action, the Government also argues that his deposition should be

prohibited because the parties' claims and defenses are without merit.  In particular, the

Government asserts that Mrs. Sherrod did not incur any damages associated with Secretary

Vilsack "requesting her resignation from USDA because he promptly offered her another

---

[27] *See* Defendant Larry O'Connor's Sealed Motion for Leave to File Document Under Seal [Dkt. No. 118] at Ex. A-2, p. 86.
[28] *See also Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 369 (N.D. Cal. 2000) (holding that the official's "personal knowledge" "directly relevant to Plaintiff's claims" distinguished case from those disallowing depositions of high-ranking officials).

position in which she would have received at least the same pay benefits that she had been receiving as State Director of USDA RD for Georgia."  Br. at 10.  We agree with the Government that Mrs. Sherrod has not suffered any damages – "By offering her her job back, it prevented there from being any actual damages here . . . There are no damages," counsel for the Government stated at the May 12, 2014 hearing –[29] but she contends otherwise and that is an issue for the Court – not the Government – to determine.  The discovery is relevant to demonstrating that, separate and apart from being unable to meet her burden of proving that she incurred damages, Mrs. Sherrod also cannot meet her burden of proving that Mr. Breitbart and Mr. O'Connor caused her alleged damages.  The Government calls Mr. O'Connor's defense "disingenuous because plaintiff does not allege that she was harmed by the Obama Administration, Secretary Vilsack, or others," Br. at 10, but Mr. O'Connor's defense is not barred simply because the plaintiff did not allege it for him.

**B.**     **Secretary Vilsack's Public Statements Regarding Mrs. Sherrod Are Not An Appropriate Substitution For An Oral Deposition Where He Can Be Examined Regarding Mrs. Sherrod, Her Speech, And Her Explanations Before She Resigned**

Secretary Vilsack's public statements regarding Mrs. Sherrod cannot substitute for an oral deposition eliciting his unvarnished testimony about what he knew about Mrs. Sherrod, her speech, and her explanations before she resigned.  Secretary Vilsack's carefully crafted public statements about Mrs. Sherrod do not reveal this information.  The Government argues in a footnote that a witness cannot be deposed to "test and elaborate" his or her sworn statement and that Secretary Vilsack is prepared to "ratify under penalty of perjury" his public statements about

---

[29] Secretary Vilsack invited Mrs. Sherrod to rejoin the USDA at a new position at a higher salary and also offered her previous position.  Mrs. Sherrod's Book at 145-146.  Mrs. Sherrod declined both offers.  She continued to receive pay and benefits until late August of 2010, which gave her nearly a month to consider returning to work without interruption in her position, pay, or benefits.

Mrs. Sherrod.  Br. at 11 n.7.  The Government's argument is unavailing and it mischaracterizes the law.  In *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859 (D.C. Cir. 1989), the court did not hold, as the Government asserts, that "No litigant may conduct discovery if his or her sole purpose in doing so is to 'test and elaborate affaints' testimony.'"[30]  The issue in that case was whether the district court had abused its discretion by not deferring or denying summary judgment under Federal Rule of Civil Procedure 56(f) to allow discovery to "'test and elaborate'" affidavits submitted in support of summary judgment.  *Id.* at 861.  The Court of Appeals concluded that there was no abuse of discretion because appellant had not explained to the trial court or the appellate court why there was any "reason to question" the sworn statements and thus "no specific reasons demonstrating the necessity and utility of discovery to enable her to fend off summary judgment[.]"  *Id.*

In the present case, by contrast, the evidence suggests that Mrs. Sherrod was not asked to resign because of any fundamental misimpression on the part of her superiors about her speech, as Secretary Vilsack's public statements suggest.  The internal e-mails produced by the Government suggest that Secretary Vilsack knew that Mrs. Sherrod's tale of her initial reluctance to assist a farmer because he was white concerned events that occurred *before* she was a public official, knew that she did assist the white farmer, and knew Mrs. Sherrod's view that "this piece of tape shows only one small part of a longer story she told of her personal transformation beyond race,"[31] and yet the Government nevertheless demanded her immediate resignation.

Furthermore, the discovery to date has revealed time and again that the Government's public statements do not accurately reflect their private statements or deliberations behind closed doors.  For example, in contrast to the Government's public stance on Mrs. Sherrod's speech,

---

[30] Br. at 11 n.7.
[31] FOIA_00847.

internal reactions to the *full* video were similar to the opinions expressed in the Blog Post.[32]

Similarly, Secretary Vilsack's public denial of any White House involvement[33] is contradicted

by documents establishing that the White House was actively involved in the decisions that were

being made concerning Mrs. Sherrod and by the Government's assertion of the deliberative

process privilege for hundreds of e-mail documents produced by the Executive Office of the

President.[34]

Secretary Vilsack's public statements alone are hardly sufficient to address the key issues

in this case surrounding Mrs. Sherrod's abrupt termination from her job at the USDA. An oral

deposition of Secretary Vilsack is critical to Mr. O'Connor's ability to defend the claims against

him.

### C.  Alternative Discovery Procedures Are Insufficient Means To Obtaining The Necessary Information From Secretary Vilsack

In a footnote, the Government mentions that it offered to have Secretary Vilsack answer

written questions in lieu of an oral deposition and that the parties did not accept this offer. Br. at

1 n.3. As a general matter, questioning by written interrogatories is not "an adequate substitute

for taking … depositions" and placing "such a limitation on discovery would be contrary to the

'basic premise 'that the deposition-discovery rules are to be accorded a broad and liberal

treatment.'" *Fin. Gen. Bankshares, Inc. v. Lance*, 80 F.R.D. 22, 23 (D.D.C. 1978) (quoting

*Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964)); *see also Am. Broad. Cos., Inc. v. United*

---

[32] *See* Defendant Larry O'Connor's Sealed Motion for Leave to File Document Under Seal [Dkt. No. 118] at Ex. A-2, p. 86; *see also* FOIA_002790.

[33] July 21 Press Conference Transcript.

[34] *See, e.g.*, FOIA_000847; FOIA_001109; FOIA_001345; FOIA_000826; FOIA_000954; FOIA_001489; FOIA_001630. In addition, White House "officials" reportedly have acknowledged in background interviews that "the White House was more involved in the immediate response to the video of [Mrs.] Sherrod's remarks than officials initially let on." *See* Mary Clare Jalonick, *Sherrod firing: e-mails reveal White House role*, CHRISTIAN SCIENCE MONITOR (March 8, 2012), available at http://www.csmonitor.com/USA/Latest-News-Wires/2012/0308/Sherrod-firing-e-mails-reveal-White-House-role.

*States Info. Agency*, 599 F. Supp. 765, 769 (D.D.C. 1984) (rejecting government's argument that head of agency should not be deposed and should instead be questioned by written interrogatories on the grounds that the proposed restriction would "frustrate any meaningful discovery," noting that depositions are more "efficient" and "more reliable, as they are taken under oath, and the deponents' responses are relatively spontaneous").[35]

There are several reasons why an oral deposition is indispensable, including that "the interrogatory format does not permit the probing follow-up questions necessary," that it is important to "observe the demeanor of the witness and evaluate his credibility," and because written questions would "provide an opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes." *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y. 1989) (internal citations omitted). In this case, the ability to ask "probing follow-up questions" is crucial in light of the incompleteness of the Government's document productions and Secretary Vilsack's extensive personal involvement in the topics to be covered. *Id.* Answers "carefully tailored" by the Department of Justice are more likely to "generate additional discovery disputes" than they are to furnish unvarnished testimony of Secretary Vilsack. *Id.* Finally, given the parties' competing interests in this case, we anticipate the need to cross-examine Secretary Vilsack regarding the testimony elicited by counsel for Mrs. Sherrod and to question him regarding documents that are arguably at odds with the Government's public statements. In this regard, live testimony will be necessary to assess his credibility. *See*, *e.g.*, *Energy Capital Corp. v. United States*, 60 Fed. Cl. 315, 318-19 (Fed. Cl. 2004) (finding that the court was "within its discretion" to require videotaped, oral depositions of former Secretary of Housing and Urban Development and the

---

[35] The court also rejected the government's alternative proposal that the deposition should be limited to one hour, finding that this extraordinary constraint "would seriously frustrate the plaintiffs' ability to meaningful examine" the deponent. *Id.*

agency's former General Counsel "as opposed to another means such as an affidavit," noting that live testimony was "necessary to assess the credibility of the witnesses"); *Gibson v. Carmody*, No. 89 Civ. 5358, 1991 WL 161087, *1 (S.D.N.Y. 1991) (finding that the "submission of written questions . . . is an inadequate, and perhaps ultimately wasteful, substitute for an oral deposition" of the former New York City Police Commissioner where he had "personally participated in proceedings relating to or stemming from the investigation of the facts underlying this case").

Of course, Mr. O'Connor recognizes that Secretary Vilsack's time is limited and valuable and will conduct an efficient deposition that is focused on information directly relevant to the claims and defenses in this action.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion of the United States to Quash Certain Deposition Subpoenas Issued to the Secretary of Agriculture.

DATED:        May 30, 2014

BAKER & HOSTETLER LLP

By:      */s/ Mark I. Bailen*
Bruce W. Sanford (356568)
Bruce D. Brown (457317)
Mark I. Bailen (459623)
Elizabeth A. Scully (466918)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. NW, Suite 1100
Washington, DC 20036
Tel:  202-861-1500
Fax:  202-861-1783
bsanford@bakerlaw.com
bbrown@bakerlaw.com
mbailen@bakerlaw.com
escully@bakerlaw.com

*Attorneys for Defendant Larry O'Connor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 30, 2014, I served a true and correct copy of the

foregoing Defendant Larry O'Connor's Memorandum of Points and Authorities in Opposition to

Motion of the United States Government to Quash Certain Deposition Subpoenas Issued to the

Secretary of Agriculture via CM/ECF on the following:

Thomas D. Yannucci, P.C.
Michael D. Jones
Beth A. Williams
Peter A. Farrell
KIRKLAND & ELLIS LLP
655 15th Street, NW
Suite 1200
Washington, DC 20005
Tel:  (202) 879-5000
Fax:  (202) 879-5200
thomas.yannucci@kirkland.com
michael.jones@kirkland.com
beth.williams@kirkland.com
peter.farrell@kirkland.com

Thomas A. Clare
CLARE LOCKE LLP
902 Prince Street
Alexandria, VA  22314
Telephone: (202) 628-7400
tom@clarelocke.com

*Attorneys for Shirley Sherrod*

David M. Glass
Senior Trial Counsel, Department of
Justice, Civil Division
20 Massachusetts Ave., N.W.,
Room 7200
Washington, D.C. 20530-0001
Tel: (202) 514-4469
david.glass@usdoj.gov

*Attorney for the United States*

Eric A. Dubelier
Daniel Z. Herbst
REED SMITH LLP
1301 K Street NW
Suite 1100, East Tower
Washington, DC 20005
Tel:  (202) 414-9200
Fax:  (202) 414-9299
edubelier@reedsmith.com
dherbst@reedsmith.com

Harrison J. Dossick
REED SMITH LLP
1901 Avenue of the Stars
Suite 700
Los Angeles, CA 90067-6078
Tel:  (310) 734-5200
Fax:  (310) 734-5299
hdossick@reedsmith.com

*Attorneys for Susannah Breitbart*

/s/ Mark I. Bailen
Mark I. Bailen