**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

**JUN 0 9 2014**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

SHIRLEY SHERROD,                    )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )        Civil Case No. 11-00477 (RJL)
                                    )
SUSANNAH BREITBART *et al.*,        )
                                    )
        Defendants.                 )

**MEMORANDUM OPINION**
June **9** , 2014 [Dkt. #117]

    The pending motion to quash arises out of an action for defamation, false light,

and intentional infliction of emotional distress.  Compl. ¶ 1 [Dkt. #1-2].  Plaintiff Shirley

Sherrod alleges that a blog post and video excerpts published by Andrew Breitbart[1] and

Larry O'Connor depicted her as a racist and led to her being forced to resign from her job

as the Georgia State Director for Rural Development for the United States Department of

Agriculture ("USDA"), a post to which the Obama Administration appointed her in 2009.

*Id.*  Sherrod and O'Connor have noticed subpoenas to Secretary of Agriculture Thomas J.

Vilsack, a third party.  Sec'y Mot. to Quash, Ex. J [Dkt. #117-11]; Sec'y Motion to

Quash, Ex. K [Dkt. #117-12].  The United States moves to quash those subpoenas.  Sec'y

Mot. to Quash [Dkt. #117].  For the reasons described herein, the United States' motion

is DENIED.

---

[1] Susannah Breitbart was substituted as a defendant in this action at a status conference on October 16, 2013, after the 2012 death of her husband, Andrew Breitbart. *See* Mot. to Substitute Party [Dkt. 68].  For clarity, I include Anderw Breitbart's first name where appropriate.

1

## BACKGROUND

On July 19, 2010, Andrew Breitbart published a blog post containing embedded video clips of excerpts from a speech Sherrod gave to the NAACP in the spring of 2010. Joint Meet and Confer Statement at 2 [Dkt. #81]. The video was introduced by a series of slides, including slides that stated "Ms. Sherrod admit[ted] that in her federally appointed position, overseeing over a billion dollars . . . [s]he discriminates against people due to their race." Compl. ¶¶ 35-36; Breitbart Answer ¶¶ 35-36 [Dkt. #37]. Shortly before Andrew Breitbart published the blog post, O'Connor posted the video clips to his YouTube account. Joint Meet and Confer Statement at 2.

Later that day, Secretary of Agriculture Thomas Vilsack was made aware of the video excerpts. U.S. Status Conf. Mem., Ex. B [Dkt. #89-3]; U.S. Status Conf. Mem., Ex. C at 2 [Dkt. #89-4]. Secretary Vilsack has acknowledged that he "asked for and accepted [plaintiff's] resignation" that evening. U.S. Status Conf. Mem., Ex. B. The next day, July 20, 2010, the NAACP released the full video of Sherrod's speech, O'Connor Answer ¶ 80 [Dkt. #38], which made apparent Sherrod was retelling a story that had transpired years earlier. The Secretary called Sherrod on July 21, 2010, apologized to her, and discussed the possibility of Sherrod taking a different position at the USDA. U.S. Status Conf. Mem., Ex. C at 1. Approximately a month later, the Secretary met with Sherrod in person, again proposing a potential return to the USDA, but Sherrod declined. U.S. Status Conf. Mem., Ex. A at 1-2 [Dkt. #89-2].

Ms. Sherrod filed this suit in February 2011 in the Superior Court of the District of Columbia. Compl. Defendants removed it to federal court in March 2011. Notice of

Removal [Dkt. #1].  An interlocutory appeal challenging this Court's decision to deny

defendants' motion to dismiss delayed the start of discovery for approximately two years.

*See* Notice of Appeal [Dkt. #41].  Our Circuit affirmed the denial of the motion to

dismiss in the summer of 2013.  Mandate of USCA [Dkt. #64].  Fact discovery began in

earnest shortly thereafter with an initial eye toward completion in May 2014, Scheduling

Order [Dkt. #82], but it has been mired in disputes since then.

        The parties have pursued extensive discovery, with original document requests

asking for documents spanning time frames of over four years.  *See, e.g.*, U.S. Status

Conf. Mem., Ex. E at 8-12 [Dkt. #89-6]; U.S. Status Conf. Mem., Ex. F [Dkt. #89-7];

U.S. Status Conf. Mem., Ex. G [Dkt. #89-8].  The parties have noticed over 10

depositions of current and former senior government officials, U.S. Status Conf. Mem. at

1 [Dkt. #89], including the depositions of four former White House officials, WH Mot. to

Quash [Dkt. #111],  and two sitting Congressmen, Congress Mot. to Quash [Dkt. #108].

Defendant O'Connor, in specfic, has sought particularly wide-ranging discovery,

including requests to Sherrod and third parties related to the *Pigford v. Glickman*

litigation.  Sherrod's Mot. for Protective Order [Dkt. #113]; Sherrod's Mot. for Protective

Order, Ex. 2 at 10 [Dkt. #113-2].

        Naturally, both sides have subpoenaed the USDA for documents.  U.S. Status

Conf. Mem at 1.  Sherrod requested 10 categories of documents from June 2009 through

the time of production, U.S. Status Conf. Mem., Ex. E at 8-12, while defendant O'Connor

requested 73 categories of documents through two subpoenas, including some that

reached back to July 2008, U.S. Status Conf. Mem., Ex. F; U.S. Status Conf. Mem., Ex.

G. After months of negotiating, the USDA appears to have agreed with Sherrod and O'Connor on search protocols in response to their subpoena, but submits it will take months to fully complete document gathering, review, and production, not counting, of course, any challenges by the parties to claims of attorney-client, work product, and/or executive privilege.[2] U.S. Mar. 13, 2014, Response at 5 [Dkt. #97] (indicating that loading documents onto a platform to be searched could take up to 180 days, before review and production). Indeed, the search protocol calls for USDA to search the emails of 50 custodians, including searches over a three-year time frame for the term "Sherrod" and searches of 70 terms for a more limited period in July 2010. U.S. Mar. 13, 2014, Response at 3-4. To say the least, both sides, in this Court's judgment, have launched discovery requests greatly disproportionate to the specific factual issue(s) that must be resolved at the USDA.

In addition, both plaintiff Sherrod and defendant O'Connor have noticed Secretary Vilsack for an oral deposition. Sec'y Mot. to Quash, Ex. J; Sec'y Mot. to Quash, Ex. K. The United States now moves to quash those subpoenas. Sec'y Mot. to Quash.

## ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Generally speaking, 'relevance' for discovery purposes is broadly

---

[2] The government has indicated at recent status conferences that some documents have been and will continue to be made available, *see, e.g.*, May 27, 2014, Hearing Tr. at 28-31 [Dkt. # 121-1], but has not submitted any formal representation of any shorter time period in which the current requests, as they stand, may be completed.

construed." *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997).

Alongside these general statements of broad discovery power, courts recognize a need to limit certain requests for discovery, including requests for oral depositions of high-level government officials. "[S]ubjecting a cabinet officer to oral deposition is not normally countenanced." *Peoples v. U.S. Dep't of Agric.*, 427 F.3d 561, 567 (D.C. Cir. 1970). "[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)). "High ranking government officials have greater duties and time constraints than other witnesses," *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993), and those duties "should not be interrupted by judicial demands for information that could be obtained elsewhere," *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008).

However, the courts also recognize and value the parties' needs to develop and prepare their cases. High-ranking officials may be subject to depositions if "'they have *some* personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere.'" *Payne v. District of Columbia*, 859 F. Supp. 2d 125, 136 (D.D.C. 2012) (quoting *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C.1998)); *see also Byrd v. District of Columbia*, 259 F.R.D. 1, 7 (D.D.C. 2009) ("Unless the movant can show that the need for the protective order is

'sufficient to overcome plaintiffs' legitimate and important interests in trial preparation,' high-ranking officials are subject to deposition." (quoting *Alexander*, 186 F.R.D. at 3).

It is clear in this case that Secretary Vilsack has personal knowledge that is directly relevant to the claims and defenses here. The establishment of (or failure to establish) a connection between the blog post and Sherrod's loss of her job is a central issue in this defamation case. Secretary Vilsack has stated that it was his decision to request Sherrod's resignation. U.S. Status Conf. Mem., Ex. C at 2. He is the only one in a position to confirm that and to explain the relationship, if any, of that decision to the blog post and video clips at the heart of this defamation case. Secretary Vilsack, of course, was not the only government official aware of the video excerpts and blog post. He knows who counseled him and the contents of that counsel, as well as what other factual knowledge he had at the time he decided to ask for Sherrod's resignation. Secretary Vilsack also has similar knowledge regarding his decision to withdraw his resignation demand, apologize to Sherrod, and raise with her the possibility of returning to work at USDA. To say the least, his personal knowledge is critical to the resolution of this case.

This situation also meets the second criterion necessary to allow the deposition of a sitting Cabinet member to go forward: the Secretary has information not available elsewhere. The Secretary alone has precise knowledge of what factors he considered and how they influenced his ultimate decision, so that information must come from him, not from third parties. This is not a case where another witness "would seem more logically

suited to clearing up lingering questions regarding" his own decisions. *Cheney*, 544 F.3d at 314.

The government, not surprisingly, argues that the information the parties seek is already in the public record through a statement Secretary Vilsack issued on July 20, 2010, and two press conferences he held on July 21, 2010, and August 24, 2010. Sec'y Mot. to Quash 11. In those public remarks, the Secretary has declared the decision was his and explained some of the reasoning behind it. *See* U.S. Status Conf. Mem., Ex. A; U.S. Status Conf. Mem., Ex. B; U.S. Status Conf. Mem., Ex. C. The government further proffers that Secretary Vilsack is ready to "ratify[] under penalty of perjury everything that he said in his statement of July 20, 2010, and everything that he said at the two press conferences dealing with plaintiff." Sec'y Mot. to Quash 11 n.7.

Although such ratification may mitigate any concerns this Court or the parties have about those statements not being made under oath, it does not obviate the need for Secretary Vilsack's deposition. The press, which had very different motivations than do the parties to this case, did not ask the type of probing follow-up questions counsel expect to ask at this deposition regarding who he spoke to, what information he was presented with and considered, and how, if at all, different factors influenced his decision. The public statements the Secretary chose to make cannot possibly substitute for the answers to questions specifically directed to his underlying reasoning.

Indeed, oral deposition, rather than deposition by written questions, is clearly appropriate and necessary here. Put simply, written questions lack the flexibility of oral examination, the latter of which allows the questioner to adjust on the fly and confine his

questions to the relevant ones while still satisfying himself and his client that a particular line of inquiry has been exhausted.[3]  Moreover, both parties and the Court believe a limited deposition will provide the parties with the very information that will enable them to *substantially* narrow the documentary requests they have made to date, and thereby limit further the government's burden both to review and produce more documents and to prepare and produce more witnesses.  In addition, a videotaped oral deposition may well obviate the need for the Secretary to testify at any future trial in this matter.

Naturally, this Court will provide specific parameters to ensure Secretary Vilsack's deposition will be limited in both time and scope.  *See Cheney*, 544 F.3d at 314. Fishing expeditions and wild goose chases *of any kind* will not be permitted.  Plaintiff Sherrod and defendant O'Connor will each have no more than one hour to question the Secretary regarding his decision to request and accept Sherrod's resignation, and his subsequent decision to apologize and offer her the opportunity to return to the USDA. The parties will be directed to work with the Secretary's staff to determine a time, during either the work week or a given weekend, that is least disruptive to his schedule. Furthermore, this Court will make itself available, simultaneously, to resolve on the record any disputes which may arise over the course of the deposition.

---

[3] Nor would deposition by written question in accordance with Federal Rule of Civil Procedure 31 eliminate the need for Secretary Vilsack to appear, because "Rule 31 clearly contemplates a witness's personal presence at a deposition, where the witness delivers his or her testimony orally.  It does not contemplate written responses to written deposition questions." *Kendrick v. Bowen*, CIV. No. 83-3175, 1989 WL 39012, at *1 n.2 (D.D.C. Apr. 13, 1989).

## CONCLUSION

Thus, for all of the foregoing reasons, the Motion of the United States to Quash Certain Deposition Subpoenas Issued to the Secretary of Agriculture is DENIED. An appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge