**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SHIRLEY M. SHERROD, Plaintiff, v. SUSANNAH BREITBART, *et al.*, Defendants. | No. 1:11-cv-00477-RJL OPPOSITION OF THE UNITED STATES TO THE MOTION OF DEFENDANT O'CONNOR TO INVALIDATE CERTAIN WITHHOLDINGS UNDER THE DELIBERATIVE PROCESS PRIVILEGE |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ..........................................................................................................1

ARGUMENT .................................................................................................................................3

I.     THE DELIBERATIVE PROCESS PRIVILEGE IS NOT LIMITED TO DELIBERATIONS CONCERNING THE FORMULATION OF PUBLIC POLICY ..............................................................................................................................3

II.    THE DELIBERATIVE PROCESS PRIVILEGE IS NOT RENDERED INAPPLICABLE BY ANY QUESTION OF GOVERNMENTAL INTENT ................................................4

III.   ALL OF THE MATERIAL WITHHELD PURSUANT TO THE DELIBERATIVE PROCESS PRIVILEGE HAS BEEN WITHHELD APPROPRIATELY ..........................5

CONCLUSION ..............................................................................................................................8

**TABLE OF CASES**

Page

*Access Reports v. Dep't of Justice*, 926 F.2d 1192 (D.C. Cir. 1991)................................................5

*Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11 (D.D.C. 1997)...........................................3

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)..................................3

*Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1 (2001)............................3, 4

*In re Subpoena Duces Tecum*, 145 F.3d 1422 (D.C. Cir. 1998)...................................................4, 5

*In re Subpoena Duces Tecum*, 156 F.3d 1279 (D.C. Cir. 1998).......................................................4

*Loving v. Dep't of Defense*, 550 F.3d 32 (D.C. Cir. 2008) ...............................................................4

*Nat'l Sec. Archive v. CIA*, 2014 WL 2053829 (D.C. Cir. May 20, 2014) ....................................3, 5

*Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429 (D.C. Cir. 1992) ......................3

*Pub. Citizen, Inc. v. OMB*, 598 F.3d 865 (D.C. Cir. 2010)................................................................4

# TABLE OF ECF ENTRIES

ECF No. 1-2         Complaint (Feb. 11, 2011)

ECF No. 37          Answer of Defendant Andrew Breitbart (Aug. 11, 2011)

ECF No. 38          Answer of Defendant Larry O'Connor (Aug. 11, 2011)

ECF No. 89-2        USDA Transcript, Rel. No. 0421.10 (Aug. 24, 2010)

ECF No. 89-3        Statement of Secretary of Agriculture Tom Vilsack (July 20, 2010)

ECF No. 89-4        USDA Transcript, Rel. No. 0383.10 (July 21, 2010)

ECF No. 89-6        Letter Beth A. Williams to Alexis R. Graves (Oct. 30, 2013

ECF No. 89-7        Subpoena Larry O'Connor to United States Department of Agriculture (Nov. 19, 2013)

Ex. No. 89-8        Subpoena Larry O'Connor to Executive Office of the President (Nov. 20, 2013)

ECF No. 96          United States' Response on Behalf of the Executive Office of the President to Defendant O'Connor's Motion to Compel Compliance with the Subpoenas (Mar. 13, 2014)

ECF No. 97          United States' Response on Behalf of the U.S. Department of Agriculture to Plaintiff's Motion to Adopt Modified Discovery Plan and to Defendant O'Connor's Motion to Compel Compliance with Subpoenas and Motion for a Protective Order Regarding Timing of Production (Mar. 13, 2014)

ECF No. 121         Reply in Support of the Motion of the United States to Quash Certain Deposition Subpoenas Issued to the Secretary of Agriculture (June 3, 2014)

## TABLE OF EXHIBITS

Ex. A            Declaration of Ramona E. Romero (July 2, 2014)

Ex. B            Declaration of Jennifer M. O'Connor (July 2, 2014)

**PRELIMINARY STATEMENT**

Plaintiff Shirley M. Sherrod and defendant Larry O'Connor have issued certain document subpoenas to the U.S. Department of Agriculture (USDA) and the Executive Office of the President (EOP).  USDA and EOP have both produced substantial amounts of material responsive to these subpoenas but have also withheld certain material pursuant to the deliberative process privilege.  By motion dated June 16, 2014, defendant O'Connor has asked that all of those withholdings be invalidated.  That motion should be denied.  Though defendant O'Connor argues otherwise, the scope of the deliberative process privilege is not limited to deliberations concerning the formulation of public policy and is not rendered inapplicable by any question of governmental intent.  Because all of the material withheld pursuant to the deliberative process privilege has been withheld appropriately, all withholdings of that material should be upheld.

**STATEMENT OF FACTS**

On August 17, 2009, plaintiff became the State Director of USDA Rural Development for Georgia and, thus, an employee of USDA.  ECF No. 1-2 ¶¶ 22; *see* ECF No. 111-2 at 1.[1]  On March 27, 2010, she gave a speech to the National Association for the Advancement of Colored People (NAACP).  ECF No. 38 ¶ 25.  On July 19, 2010, defendant Andrew Breitbart published a blog post containing a video of a portion of plaintiff's speech.  ECF No. 37 ¶¶ 2, 3, 30.  Slides introducing the video described plaintiff as admitting in her speech that "[s]he discriminate[d] against people due to their race" in her "federally appointed position."  *Id.* ¶¶ 32, 36-37.  On the same day, FoxNews.com published a report stating that "'a video has surfaced showing an Agriculture Department official regaling an NAACP audience with a story about how she withheld help to a white farmer facing bankruptcy,'" ECF No. 38 ¶ 70; other media outlets

---

[1] A table of docket entries cited in this memorandum appears at p.iii, *supra.*

published similar reports, *id.*; and the Secretary of Agriculture, Thomas J. Vilsack, asked for and accepted plaintiff's resignation after seeing a transcript of the video. ECF No. 89-3; ECF No. 89-4 at 2. Re-evaluating his position after the "full transcript" of plaintiff's remarks had been released by the NAACP, ECF No. 38 ¶ 80, Secretary Vilsack telephoned plaintiff on July 21, 2010, apologized, and discussed with her the possibility of her returning to USDA. ECF No. 89-2 at 3; ECF No. 89-4 at 1.

On February 11, 2011, plaintiff commenced this action for defamation, false light invasion of privacy, and intentional infliction of emotional distress against defendant Breitbart, defendant O'Connor, and defendant John Doe. ECF No. 1-2, ¶¶ 1-2. Susannah Breitbart, the widow of defendant Breitbart, was added as a defendant by minute entry dated October 16, 2013. Plaintiff alleges in this action that she was "forced to resign from her job after [d]efendants ignited a media firestorm [about her]" and that "[d]efendants drew false support for their claims from a speech given by [plaintiff] that they edited, deceptively, to create the appearance that [plaintiff] was admitting present-day racism." *Id.* ¶ 1.

By third-party subpoena dated October 30, 2013, plaintiff asked USDA to produce 10 categories of documents. ECF No. 89-6, att. at 4-5. By third-party subpoena dated November 19, 2013, defendant O'Connor asked USDA to produce 44 categories of documents. ECF No. 89-7, sched. A at 4-7. By third-party subpoena dated November 20, 2013, defendant O'Connor asked EOP to produce 29 categories of documents. ECF No. 89-8, sched. A at 4-6. The subpoenas were modified by agreements between the parties and the United States entered into on or about March 13, 2014. ECF No. 96 at 1; ECF No. 97 at 4.

To date, USDA and EOP have made the following productions of material responsive to the subpoenas:

| Date | Entity Producing | Number of Pages Produced |
|---|---|---|
| May 9, 2014 | EOP | 6,729 |
| May 19, 2014 | USDA | 4,037 |
| May 27, 2014 | USDA | 2,864 |
| June 6, 2014 | USDA | 83 |

Both USDA and EOP have withheld certain material pursuant to the deliberative process privilege from the 13,717 pages thus produced. Because the preparation of this memorandum has caused USDA and EOP to review their withholdings under the deliberative process privilege, certain material previously withheld pursuant to the privilege will be produced shortly.

## ARGUMENT

**I.    THE SCOPE OF THE DELIBERATIVE PROCESS PRIVILEGE IS NOT LIMITED TO DELIBERATIONS CONCERNING THE FORMULATION OF PUBLIC POLICY.**

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item for discovery, and front page news." *Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8-9 (2001). The object of the privilege, accordingly, "is to enhance 'the quality of agency decisions' * * * by protecting open and frank discussion among those who make them within the Government." *Id.* at 9 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)). The privilege "covers deliberative, pre-decisional communications within the Executive Branch," *Nat'l Sec. Archive v. CIA*, 2014 WL 2053829, at *1 (D.C. Cir. May 20, 2014), and applies both to "inter- and intra-agency communications." *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 14 (D.D.C. 1997). "[D]raft documents" are covered by the privilege. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

At one time, the D.C. Circuit held that the deliberative process privilege was "centrally concerned with protecting the process by which *policy* is formed." *Petrol. Info. Corp. v. U.S.*

3

*Dep't of the Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992). Relying on that holding, defendant O'Connor argues that the privilege "is intended to shield only deliberations in the context of formulating public policy" and is thus inapplicable to "[t]he Government's deliberations regarding [plaintiff's] speech to the NAACP, the demand for her resignation, and [the] offers of her re-employment." ECF No. 128-1 at 5, 6. However, this argument ignores the subsequent holding of the Supreme Court that the privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions *and* policies are formulated.'" *Klamath*, 532 U.S. at 8 (quoting *Sears*, 421 U.S. at 150) (emphasis supplied); *accord Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir 2008). It also ignores the subsequent holding of the D.C. Circuit the privilege applies to documents that "make recommendations for policy change [or] reflect internal deliberations on the advisability of *any* particular course of action." *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 875 (D.C. Cir. 2010) (emphasis supplied). For those reasons, defendant O'Connor is mistaken when he argues that the privilege is inapplicable to this case because it is limited to deliberations concerning the formulation of public policy.

## II. THE DELIBERATIVE PROCESS PRIVILEGE IS NOT RENDERED INAPPLICABLE BY ANY QUESTION OF GOVERNMENTAL INTENT.

In cases where Congress or the Constitution "creates a cause of action that deliberately exposes government decisionmaking to the light," the "raison d'etre" for the deliberative process privilege "evaporates." *In re Subpoena Duces Tecum*, 145 F.3d 1422, 1424 (D.C. Cir. 1998). Thus, "if either the Constitution or a statute makes the nature of governmental officials' deliberations *the* issue, the privilege is a nonsequitur." *Id.*; *see In re Subpoena Duces Tecum*, 156 F.3d 1279, 1280 (D.C. Cir. 1998) (opinion on rehearing limiting the court's prior decision to

4

"those circumstances in which the cause of action is directed at the agency's subjective motivation").

Relying on *Subpoena Duces Tecum*, defendant O'Connor argues in this action that "the reasons for the Government's actions are directly at issue" and that the deliberative process privilege is therefore inapplicable because the claims made by plaintiff "fail as a matter of law" if, as defendant O'Connor hopes to show, she "was removed from her federally appointed position and Secretary Vilsack made [certain] statements about her for reasons other than the alleged inaccuracies in the Blog Post." ECF No. 128-1 at 1, 8-9. However, this action is not governed by *Subpoena Duces Tecum* because it is an action at common law, not an action in which Congress or the Constitution has "create[d] a cause of action that deliberately exposes government decisionmaking to the light." *See* 145 F.3d at 1424. Accordingly, the deliberative process privilege is fully available in this matter.

### III. ALL OF THE MATERIAL WITHHELD PURSUANT TO THE DELIBERATIVE PROCESS PRIVILEGE HAS BEEN WITHHELD APPROPRIATELY.

"The deliberative process privilege covers communications that are pre-decisional and deliberative." *Archive*, 2014 WL 2053829, at *2. Though these two requirements "tend to merge," *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991), a communication is pre-decisional if it "occur[s] before any final agency decision on the relevant matter" and deliberative if it is "intended to facilitate or assist development of the agency's final position." *Archive*, 2014 WL 2053829, at *2. In determining whether a particular communication is deliberative, the "'key question'" is whether its disclosure "would 'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195 (quoting *Dudman Commc'ns corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)). For that reason, the applicability of the privilege does not turn on "'the ability of an agency to identify a

5

specific decision in connection with which a [communication] is prepared'" but turns instead on the ability of the agency to "identify[] the decisionmaking process to which [the communication] contributed." *Id.* at 1196 (quoting *Sears*, 421 U.S. at 151 n.18).

In this case, USDA has relied on the deliberative process privilege to make withholdings from 158 documents. Those withholdings fall into five categories: "How to respond to [plaintiff] after release of the video" (26 withholdings); "How to handle the aftermath of [plaintiff's] resignation" (50 withholdings); "How to develop a strategy to respond to the numerous employee, public, and congressional inquiries" (84 withholdings); "Whether to invite [plaintiff] back to return to the Department as an employee" (3 withholdings); and "Cabinet officials' operational email addresses." Ex. A ¶¶ 10-14.[2] Except for the withholdings of email addresses, all of these withholdings "reflect the perspectives of a variety of staff members at various levels within the USDA, and how their efforts should inform USDA's final decisions and approach." *Id.* ¶ 16. The deliberative process privilege justifies all such withholdings because "[t]he open, candid exchange of ideas and information among USDA personnel would be seriously undermined if USDA employees could not rely on the confidentiality of their pre-decisional internal discussions, analyses, opinions, views, and recommendations." *Id.* ¶ 17. The deliberative process privilege also justifies these withholdings because the resignation of plaintiff from USDA "implicate[d] sensitive issues and significant public interest." *Id.* ¶ 16. In cases implicating such things, "it is particularly important that USDA be able to preserve its internal deliberative processes in order to ensure that its ultimate findings and final communications are accurate, well-thought out, and thoroughly researched and considered." *Id.*

---

[2] References to exhibits are to the exhibits to this memorandum.  A table of exhibits appears at p.iv, *supra*.

A different rationale applies to the email addresses withheld by USDA. "[O]nce released," those addresses would be "compromised." Ex. A ¶ 19. For that reason, disclosing the addresses would disrupt the "operations and deliberations of Cabinet officials" by requiring such officials to obtain new addresses by which the officials "reliably [might] be contacted by their immediate staff and senior officials of their agencies, the White House, and other Cabinet officers and senior government officials in other agencies and Congress." *Id.* The use of the deliberative process privilege to protect those addresses is thus appropriate because the disclosure of the addresses would affect "the mechanics of deliberative communications." *Id.*

Paralleling what USDA has done, EOP has relied on the deliberative process privilege to make withholdings from 159 documents. As is shown by its privilege log, Ex. B att, the withholdings of EOP from 54 of the documents concern draft speeches[3]; the withholdings of EOP from 53 of the documents concern dealings with the media[4]; the withholdings of EOP from 40 of the documents concern dealings with the African-American community[5]; the withholdings

---

[3] Docs. 1500, 1501, 1504, 1505, 1506, 1507, 1508, 1509, 1510, 1531, 1547, 1548, 1551, 1576, 1577, 1578, 1579, 1591, 1592, 1593, 1594, 1595, 1596, 1599, 1600, 1604, 1605, 1606, 1618, 1621, 1622, 1623, 1624, 1634, 1638, 1639, 1640, 1641, 1642, 1643, 1644, 1645, 1646, 1647, 1648, 1649, 1651, 1652 (draft speech to the Urban League); Docs. 1380, 1386, 1403 (draft speech to Alpha Phi Alpha); Docs. 1460, 1461, 1462 (draft speech to Zeta Phi Beta).

[4] Doc. 221 (withholdings concern "a draft press statement"); Doc. 121 (withholding concerns "the response to media inquiries"); Doc. 2003 (withholding concerns "possible research on media reporting"); Doc. 1224 (withholdings concern "discussion of how to respond to a media inquiry"); Docs. 166, 168, 171, 172, 173, 174, 201, 205, 208, 214, 216, 219 (withholdings concern "the NAACP's response to the blog post, subsequent media inquiries, assessment of media coverage, and the need to seek additional information"); Docs. 610, 611, 615 (withholdings concern "discussion of how to respond to a media inquiry and the need for additional information"); Docs. 608, 609 (withholdings concern "a draft email to a television producer and discussion of the draft email"); Docs. 470, 474, 486, 491, 494, 498, 504 (withholdings concern "options for responding to media inquiries and analysis to inform the response"); Docs. 1109, 1149, 1150, 1152, 1155, 1189, 1197, 1224 (withholdings concern "discussion of how to respond to a media inquiry and the need for additional information"); Docs. 1270, 1272, 1274, 1275, 1276, 1278, 1279, 1281, 1287, 1289 (withholdings concern "possible actions in in response to anticipated media coverage"); Doc.1580, 1582, 1583, 1585 (withholdings concern "options for a draft statement about the response [to media coverage regarding the blog post]"); Docs. 1420, 1421, 1422 (withholdings concern "background documents to be provided to media outlets" prior to a certain speech "and the need for further deliberations").

[5] Doc. 1404 (withholdings concern "topics to raise on a possible telephone call" with Donna Brazile; Docs. 1039, 1119, 1233, 1235, 1238, 1239, 1240, 1242, 1268, 1282, 1535, 1537, 1539, 1542, 1543, 1544, 1545 (withholdings concern "a meeting request from the National Coalition on Black Civic Participation regarding the response to

Continued

of EOP from 3 of the documents concern dealings with Congress[6]; and the withholdings of EOP from 9 of the documents concern other matters.[7]

All of these withholdings "reflect[] the exchange of information, views, and advice among White House officials."  Ex. B ¶ 5.  Because "White House officials reasonably expect that the substance of their pre-decisional discussions will remain confidential," *id.*, all of these withholdings are entitled to protection under the deliberative process privilege.  If the withholdings were to be invalidated, "White House officials would be chilled from gathering relevant information, exploring alternatives, and providing fully informed recommendations regarding the performance of the President's duties." *Id.* ¶ 6.  Because any such chilling could affect the ability of the White House "to ensure that its final determinations, if any, are informed by candid and thorough discussion, deliberation, and analysis," *see id.*, all of the withholdings should be upheld.

## CONCLUSION

For the foregoing reasons, the motion of defendant O'Connor to invalidate the withholdings of USDA and EOP under the deliberative process privilege should be denied.

---

[plaintiff's] resignation" and whether to accept that request); Docs. 1192, 1193, 1194 (withholdings concern "a telephone call from the Rev. Jesse Jackson regarding the response to [plaintiff's] resignation" and whether to accept that call); Docs. 1293, 1298, 1302, 1319, 1541 1552, 1553, 1555, 1556, 1566, 1567, 1568, 1569, 1587, 1588 (withholdings concern "[plaintiff's] speech to [a] National Association for Black Journalists event" and "possible actions in response to her speech");  Doc. 1523, 1533 (withholdings concern the "outreach strategy" of the Office of Public Engagement with "constituency groups regarding the Sherrod matter and possible telephone calls to be scheduled";  Docs. 1804, 1806 (withholdings concern "vetting research on attendees" at a certain "White House event").

[6] Docs. 1631, 1789, 1790 (withholdings concern "meetings [or contact] with congressional members regarding the Sherrod matter").

[7] Doc. 46 (withholding concerns "efforts to seek additional information regarding [plaintiff's] speech"; Doc. 96, 106, 107 (withholdings concern "advice regarding [plaintiff's] resignation" and "the need to seek additional information"); Doc. 1000 (withholding concerns the possibility of the President's "plac[ing] a phone call to [plaintiff]"); Doc. 1572 (withholding concerns the decision of USDA "to invite [plaintiff] back to the Department"); Doc. 1451 (withholdings concern "a Freedom of Information Act request regarding [plaintiff]" and "possible situations where the matter would arise"); Docs. 1554, 1581 (withholdings concern "actions taken in response to the blog post and draft portions of the speech" to the Urban League).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | STUART F. DELERY<br>Assistant Attorney General<br>RONALD C. MACHEN<br>United States Attorney<br>ARTHUR R. GOLDBERG<br>Assistant Branch Director, Department of Justice, Civil Division |
|  | s/ *David M. Glass*<br>DAVID M. GLASS, DC Bar 544549<br>Senior Trial Counsel, Department of Justice, Civil Division<br>20 Massachusetts Avenue, N.W., Room 7200<br>Washington, D.C.  20530-0001<br>Tel: (202) 514-4469/Fax: (202) 616-8470<br>Email: david.glass@usdoj.gov |
| Dated: July 3, 2014 | Attorneys for the United States |

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2014, I served the within memorandum and the exhibits to the memorandum on all counsel of record by filing them with the Court by means of its ECF system.

s/ *David M. Glass*