**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SHIRLEY SHERROD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 11-00477 (RJL) |
| | ) | |
| ANDREW BREITBART *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**[PLAINTIFF'S PROPOSED] ORDER FOR SWORN DECLARATION**
**BY SECRETARY THOMAS J. VILSACK**

It is hereby:

**ORDERED** that within 14 days of this Order Secretary of Agriculture Thomas J. Vilsack

submit a sworn declaration addressing the following issues:

1. Whether it was Secretary Vilsack's decision to request Plaintiff Shirley Sherrod's resignation as USDA Georgia State Director for Rural Development on July 19, 2010, consistent with his statement on July 20, 2010 that "Yesterday, I asked for and accepted Mrs. Sherrod's resignation. . ." and his statement on July 21, 2010 that "This was my decision, and it was a decision that I regret having made in haste."

2. Whether Secretary Vilsack believed at the time he requested Mrs. Sherrod's resignation that Mrs. Sherrod had admitted that "in her federally appointed position . . . she discriminates against people due to their race."

3. If the answer to question 2 is yes, whether Secretary's Vilsack belief that Mrs. Sherrod had admitted practicing racial discrimination in her federally appointed position was based on the Defendants' blog post on July 19, 2010 entitled "Video Proof: The NAACP Awards Racism-2010" and the video clip embedded therein entitled "NAACP Bigotry in their ranks."

4. Whether Secretary Vilsack believes, consistent with his statement made to the press on August 24, 2010, that: "Obviously, when the full transcript of what Shirley's remarks were, were made known to me, it was pretty obvious that this was a circumstance and situation where her comments were taken totally out of context, and that the main message, which is a message that was very supportive of what we're trying to do at USDA was not inconsistent, as I had originally thought, but very consistent with what we were trying to do."

5.  Whether Secretary Vilsack's statement on July 20, 2010 is true and accurate:

    Yesterday, I asked for and accepted Ms. Sherrod's resignation for two reasons. First, for the past 18 months, we have been working to turn the page on the sordid civil rights record at USDA and this controversy could make it more difficult to move forward on correcting injustices. Second, state rural development directors make many decisions and are often called to use their discretion. The controversy surrounding her comments would create situations where her decisions, rightly or wrongly, would be called into question making it difficult for her to bring jobs to Georgia.

    Our policy is clear. There is zero tolerance for discrimination at USDA and we strongly condemn any act of discrimination against any person. We have a duty to ensure that when we provide services to the American people we do so in an equitable manner. But equally important is our duty to instill confidence in the American people that we are fair service providers.

6.  Whether Secretary Vilsack believed that the controversy and media attention stemming from the Defendants' July 19, 2010 blog post would have made it more difficult for Mrs. Sherrod to perform in her previous position as USDA Georgia State Director for Rural Development.

7.  Whether Mrs. Sherrod's association with *Pigford v. Glickman,* Civil Action No. 97-1978, *In re Black Farmers Discrimination Litigation,* Misc. No. 08-0511, and all associated litigations, claims, settlements, and proceedings, including but not limited to the claim filed by New Communities, Inc. in connection with *Pigford v. Glickman*, was a factor in the decision to ask for Mrs. Sherrod's resignation.

8.  Whether Mrs. Sherrod's job performance in her role as USDA Georgia State Director for Rural Development was a factor in Secretary Vilsack's decision to call for Mrs. Sherrod's resignation.

9.  What Secretary Vilsack meant by his statements to the press on July 21, 2010 that "[Mrs. Sherrod] has gone through a very difficult period in the last couple of days" and "This is a good woman. She's been put through hell."

10. The reason Secretary Vilsack "extended[ed] to [Mrs. Sherrod] [his] personal and profound apologies for the pain and discomfort that has been caused to her and to her family over the course of the last several days" in his statement to the press on July 21, 2010.

11. The reason Secretary Vilsack stated to the press on July 21, 2010 that his decision to ask for Mrs. Sherrod's resignation "should have been done with far more thought, and it should have been done in far less haste."

12. Whether Secretary Vilsack offered Mrs. Sherrod her original job back as Georgia State Director for Rural Development when he spoke to her by phone on July 21, 2010, and, if so, why that was not mentioned in his statement to the press that same day.

13. Whether Secretary Vilsack offered Mrs. Sherrod her original job back as Georgia State Director for Rural Development for the first time on August 24, 2010.

14. The reason(s) Secretary Vilsack initially offered Mrs. Sherrod a new position at the USDA, rather than her previous position as USDA Georgia State Director for Rural Development.

15. Whether Secretary Vilsack discussed with Mrs. Sherrod the duties and responsibilities of the Deputy Director of Advocacy and Outreach in the Office of Outreach and Advocacy.

16. Whether Secretary Vilsack discussed with Mrs. Sherrod the salary she would have received as Deputy Director of Advocacy and Outreach in the Office of Outreach and Advocacy.

17. Whether Secretary Vilsack discussed with Mrs. Sherrod any budget she would have been responsible for as Deputy Director of Advocacy and Outreach in the Office of Outreach and Advocacy.

18. Whether Secretary Vilsack discussed with Mrs. Sherrod the internal reporting structure relating to the position of Deputy Director of Advocacy and Outreach in the Office of Outreach and Advocacy.

19. Whether the new position offered to Mrs. Sherrod as Deputy Director of Advocacy and Outreach in the Office of Outreach and Advocacy would have had significant "administrative responsibilities," consistent with Secretary Vilsack's statement to the press on August 24, 2010.

**SO ORDERED.**

_____
RICHARD J. LEON
United States District Judge

Dated: _____

Copies to:

Thomas D. Yannucci, P.C.
Michael D. Jones
Beth A. Williams
Peter A. Farrell
Alexander G. Stege
Heather A. Bloom
Jonathan F. Ganter
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005

Thomas A. Clare, P.C. (D.C. Bar #461964)
CLARE LOCKE LLP
902 Prince Street
Alexandria, VA 22314
Telephone: (202) 628-7400
tom@clarelocke.com

*Attorneys for Plaintiff Shirley Sherrod*

Bruce W. Sanford
Mark I. Bailen
Thomas E. Hogan
Laurie A. Babinski
BAKER & HOSTETLER LLP
1050 Connecticut Avenue NW
Suite 1100
Washington, DC 20036
*Attorneys for Defendant Larry O'Connor*

Eric A. Dubelier
Daniel Z. Herbst
REED SMITH LLP
1301 K Street NW, Suite 1100 ― East Tower
Washington, DC 20005
edubelier@reedsmith.com
dherbst@reedsmith.com

Harrison J. Dossick
REED SMITH LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, CA 90067-6078
hdossick@reedsmith.com

*Attorneys for Susannah Breitbart, as successor to Defendant Andrew Breitbart, Deceased*