# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHIRLEY SHERROD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 11-00477 (RJL) |
| | ) | |
| ANDREW BREITBART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF SHIRLEY SHERROD'S SUBMISSION REGARDING THE LAW APPLICABLE TO THE TORT CLAIMS AND THE BREITBART COMPANIES' PRIVILEGE ASSERTIONS

The parties and the Breitbart Companies[1] (the "Companies") dispute whether District of Columbia or California law governs Plaintiff Shirley Sherrod's tort claims and the Companies' privilege assertions.   As a threshold matter, the Court should be aware that the landscape is very different now than it was in 2011 when this case was first filed.   Defendant Larry O'Connor, who then argued strongly that this case must be tried in California where he lived, now lives in Maryland and works in Washington, D.C. where he hosts a daily morning radio program on WMAL.   Ex. 1 (Aug. 8, 2014 Dep. of Lawrence O'Connor) at 41:22-43:8.   Additionally, according to Defendant O'Connor, "the Breitbart companies [have] increased [their] presence in the Washington, D.C. area" in the last two years.   *Id.* at 54:3-6.   That increase has been significant: three of the five key Breitbart employees who will be deposed in this case and who were authors or recipients of many of the purportedly "privileged" documents—including the

---

[1]   "Breitbart Companies" refers generally to Breitbart Holdings, Inc., Breitbart News Network, LLC, Breitbart.com LLC, and Breitbart.tv LLC, and the affiliated individuals who have been subpoenaed.

Editor-In-Chief of Breitbart News and the former Editor-in-Chief of BigGovernment.com (now Political Editor of Breitbart.com)—currently live and work in the Washington, D.C. area.  Mr. O'Connor described as "quite a few" the number of "other individuals associated with the Breitbart organization that are currently in the Washington, D.C. area." *Id.* at 53:20-54:2.

There is little question that District of Columbia law governs the tort claims in this action. Defendants tried mightily to avail themselves of District of Columbia law when they spent almost two years attempting to apply the District of Columbia Anti-SLAPP law to this case. Moreover, Defendants cannot show that District of Columbia and California laws of defamation, false light, and intentional infliction of emotional distress have any meaningful variation.  And even if they could, this Court would still apply District of Columbia substantive law under the District of Columbia's choice-of-law analysis.

District of Columbia law also applies to the Companies' privilege assertions.  The Companies have failed entirely to demonstrate that there is a true conflict between District of Columbia and California law as they apply to each of the allegedly privileged communications. As such, any choice-of-law analysis is unnecessary.  Also, assuming that the Companies could show that California and District of Columbia privilege laws vary for the documents at issue, District of Columbia privilege law would still apply because the Companies have not shown that there is a "special reason" to apply California privilege law to each communication.

## BACKGROUND

In August and September 2011, Plaintiff Shirley Sherrod requested documents from Defendant Larry O'Connor, and in December 2013 Plaintiff served document subpoenas on the Companies.  Over the first part of 2014, Defendant O'Connor and the Companies made a number of piecemeal document productions but withheld many other documents on the grounds that they were subject to the attorney-client privilege and attorney work product doctrine.  Others

were not privileged on their face but were withheld by the Companies "in an abundance of caution."  Ex. 2 (May 19, 2014 D. Herbst Letter).  Plaintiff disputed these assertions.

Substantial evidence revealed that many of the documents being withheld were not in fact privileged.  In one chain of correspondence, for example, sent on July 19, 2010—the day of the original Blog Post's publication—Mr. O'Connor wrote to Steve Bannon, who was formerly a Board member at Breitbart News Network and is now Executive Chairman, an email entitled "she resigned!"  In it, he asked Mr. Bannon, "Pretty good day, huh?"  Mr. Bannon responded:

"Ur kidding me, right . . . that scalp still has bloody flesh on it!!!!"

Mr. O'Connor responded: "And its a two-fer.  Gets naacp to shut up for a day."  Ex. 3 (LOC00000571).  That email was not produced by Defendant O'Connor until ***two weeks ago***, on August 4, 2014.  Until then, it had been logged on Mr. O'Connor's privilege log with the description:  "Email in furtherance of privileged communications with legal counsel and others in company regarding Sherrod resignation." Ex. 4 (July 15, 2014 O'Connor Updated Privilege Log).

The "bloody flesh" email was withheld presumably because, at the bottom of the chain, Alexander Marlow (then an Associate Editor at Breitbart.com, and now Editor-in-Chief of Breitbart News) emailed a large group of people—including Larry Solov—noting that he "[w]as hoping [Andrew Breitbart] would call her 'racist.'"  Ex. 3.  It is because of this and other questionable privilege calls on emails to, from, and copying Larry Solov that Plaintiff found it imperative to bring the issue of privilege to the Court's attention.

After Plaintiff raised this issue with the Court, the Companies offered to produce a number of documents previously withheld for privilege.  Most of these, however, were documents that *predated* Defendants' Blog Post about Plaintiff's speech to the NAACP or documents sent or received by third-parties such as the Los Angeles Assistant District Attorney,

Patrick Frey.  Despite Plaintiff's numerous efforts to meet and confer with counsel for the Companies and resolve the discovery issues, the Companies continued to assert privilege over numerous documents sent or received by Mr. Solov (the "Solov Communications").

On July 21, 2014, the Court held a hearing regarding the documents over which the Companies are claiming privilege.  At that hearing, the Companies asserted for the first time that the Solov Communications are privileged under *California* law and that District of Columbia privilege law does not apply to its privilege assertions.  Faced with the Companies' novel argument, the Court ordered that the parties submit memoranda discussing the choice-of-law issue.  Plaintiff and the Companies submitted the initial memoranda on July 24, 2014.  The Companies also submitted a Declaration of Laurence Solov in an effort to establish that the withheld documents are privileged under California law.  At the July 28, 2014 hearing, the Court stated that the briefing had not resolved all of the open questions and ordered Plaintiff and the Companies to submit additional briefing addressing, among other things, whether the law that applies to Plaintiff's tort claims must be the same as the law that applies to the Companies' privilege assertions and whether California or District of Columbia privilege law applies.

## ANALYSIS

**I.   District of Columbia Law Applies to Plaintiff's Tort Claims.**

District of Columbia law applies to Plaintiff's claims for two reasons.  *First*, Defendants have not shown that there is a conflict between District of Columbia law and California law.  Without a conflict, this Court should apply District of Columbia law and decline to conduct a choice-of-law analysis.  *Second*, even if the laws did conflict—which has yet to be shown—the District of Columbia's policy would be most advanced by having its law applied.  Furthermore, the District of Columbia has the most significant relationship with Defendants' wrongs and Plaintiff's resulting injuries.

This Court must apply the choice-of-law rules of the jurisdiction in which it sits: the District of Columbia. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014). "Employing the choice-of-law rules of the District of Columbia, 'the [C]ourt must first determine if there is a conflict between the laws of the relevant jurisdictions.'" *Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 12 (D.D.C. 2010) (quoting *Y.W.C.A. of the Nat'l Capital Area, Inc. v. Allstate Ins. Co. of Canada,* 275 F.3d 1145, 1150 (D.C. Cir. 2002)). If the parties do not identify a specific conflict of law, then courts apply District of Columbia law by default. *See Parker v. K & L Gates, LLP*, 76 A.3d 859, 866 n.5 (D.C. 2013) (citing *International Bus. Machs. Corp. v. Bajorek,* 191 F.3d 1033, 1037 (9th Cir. 1999)); *International Bus. Machs. Corp.,* 191 F.3d at 1037 ("Though the parties disagree on whether to apply California or New York choice of law principles, the briefs set out no difference between them, so we need not decide, and can proceed to application of the principles in Restatement (Second) Conflict of Laws section 187."); *Burke v. Air Serv Int'l, Inc.*, 775 F. Supp. 2d 13, 17 (D.D.C. 2011) *aff'd,* 685 F.3d 1102 (D.C. Cir. 2012) ("Before identifying that jurisdiction, however, the Court must determine whether the laws of the potentially interested jurisdictions actually vary; if not, forum law applies by default.") (citing *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992)).

If there is a conflict, then courts may apply "two tests in determining which jurisdiction's law should govern a dispute[.]" *Shaw v. Marriott Int'l, Inc.,* 605 F.3d 1039, 1045 (D.C. Cir. 2010). First, courts apply the governmental interests analysis. If that test is inconclusive, then second, courts apply the "most significant relationship" test. *See Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180-81 (D.C. 2006); *D.C. v. Coleman*, 667 A.2d 811, 816 (D.C. 1995).

**A.  The Defendants Have Not Shown That California and District of Columbia Tort Laws Conflict.**

This Court need not engage in a conflict of laws analysis unless there is a true conflict between District of Columbia and California defamation, false light, and intentional infliction of emotional distress laws.  The substantive laws here are exceedingly similar.  Indeed, in their Motion to Dismiss, Defendants conceded that it was irrelevant whether California or District of Columbia law applied to the false light and intentional infliction of emotional distress claims. Dkt. No. 22 at 42-43.  Unless Defendants establish that there is a conflict between the District of Columbia and California laws of defamation, false light, and intentional infliction of emotional distress, a choice-of-law analysis is unnecessary.  *See Parnigoni*, 681 F. Supp. 2d at 12.

**B.  The District of Columbia's Policy Would Be the Most Advanced by Having Its Law Applied.**

Even if the Court were to find that there is a conflict between District of Columbia and California tort law, the Court would *still* apply District of Columbia law under the governmental interests analysis.  Under this test, courts "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review."  *Hercules & Co. v. Shama Rest. Corp.*, 566 A.2d 31, 41 (D.C. 1989) (internal quotation marks and citations omitted).  The District of Columbia has a powerful interest in protecting the reputations of federal employees and an equally strong interest in protecting federal employees' careers and career opportunities.

Moreover, Defendants assert that the Blog Post stemmed from events in Washington.  As Defendants explained at length in their Motion to Dismiss, the Blog Post was written in the "context of [a] months-long and very loud public clash between Tea Party conservatives and the NAACP[.]"  Dkt. No. 22 at 20.  They claim that this clash began during a four-day rally in Washington, D.C. at which Tea Party members were alleged to have hurled racial epithets at

members of the Congressional Black Caucus.  *Id.* at 17.  Defendants have made the Washington, D.C. events a lynchpin of their motivation for publication.

Further, in "applying [the governmental interests analysis] to defamation actions, 'the weight of authority considers that the law to be applied is not that of the place where the offending article was written, researched, or published, but that the place where the plaintiff suffered injury by reason of his loss of reputation is the more significant.'"  *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 626 (D.C. Cir. 2001) (quoting *Dowd v. Calabrese*, 589 F. Supp. 1206, 1210 (D.D.C. 1984)).  While the damage to Plaintiff's reputation occurred across the country as Defendants' defamatory statements were published on BigGovernment.com and YouTube, and were amplified by numerous local and national media sources, Plaintiff's damage was undoubtedly felt most acutely in the District of Columbia.  Plaintiff's direct supervisors were in the District of Columbia and remained in constant contact within the District of Columbia.  After learning about the Blog Post, USDA-senior officials based in the District of Columbia—including Secretary of Agriculture Tom Vilsack—placed Plaintiff on administrative leave and later, forced Plaintiff to resign from her position.[2]  Accordingly, this Court should apply District of Columbia common law of defamation and false light to Plaintiff's claims because doing so would advance the District of Columbia's policies.  *See Taylor v. Shinseki*, CV 13-1416 (JDB), 2014 WL 350261, at *6 (D.D.C. Jan. 31, 2014).

The Defendants cannot credibly dispute that District of Columbia law applies to Plaintiff's tort claims: indeed, the Defendants argued for over two years that the *District of*

---

[2]   Moreover, the Defendants have issued subpoena after subpoena to individuals in the District of Columbia for information they believe is relevant.  Among those subpoenaed include the USDA, the Executive Office of the President ("EOP"), Secretary Vilsack, USDA employees Krysta Harden and Cheryl Cook, current and former EOP employees Robert Gibbs, Valerie Green, Rein Cherlin, and Jim Messina, and U.S. Representatives James Clyburn and Sanford Bishop.  Defendants have thus conceded that the District of Columbia plays an essential role to their defense of the case.

*Columbia's* Anti-SLAPP Act bars Plaintiff's tort claims.   *See* Dkt. No. 23; Dkt. No. 64. Similarly, Plaintiff has relied on District of Columbia law throughout this litigation.  *See, e.g.*, Dkt. No. 27.   That both parties have assumed the application of District of Columbia law is further support that the District of Columbia has a greater interest in this action.  *See Weyrich*, 235 F.3d at 627 (finding that the District's common law of defamation and false light invasion of privacy law applied, in part, because "both parties rel[ied] on District of Columbia law").

### C. The District of Columbia Has the Most Significant Relationship with Plaintiff's Tort Claims.

Even if the governmental interests analysis did not clearly demonstrate that District of Columbia law applies to Plaintiff's tort claims—and it does—the Court would still find that District of Columbia law applies because the District of Columbia has the most significant relationship with Plaintiff's tort claims.

Under the most significant relationship test, courts examine the four factors set forth in the Restatement (Second) of Conflict of Laws:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Law § 145(2); *see Washkoviak*, 900 A.2d at 181; *Oveissi v. Islamic Republic of Iran,* 573 F.3d 835, 842 (D.C. Cir. 2009).

As discussed above, the injury to Plaintiff's reputation occurred most forcefully in the District of Columbia.  The conduct causing her injury—the communication and publication of the edited video and defamatory Blog Post—occurred in multiple states, including in the District of Columbia.  *See Pearce v. E.F. Hutton Group, Inc.*, 664 F. Supp. 1490, 1498 (D.D.C. 1987)

(explaining that the place of conduct is the location of "the principal acts of communication," and not the place where the report containing the allegedly defamatory statements was prepared and disseminated).  And Plaintiff's career as a federal official was closely tied to the District of Columbia.  Her supervisors, who were in constant communication with Plaintiff after the Blog Post was published and who eventually demanded her resignation, all worked from USDA Headquarters in the District of Columbia.

Defendant O'Connor now works in the District of Columbia and the Breitbart entities carry on significant business here.  Other than being the target of Defendants' tortious conduct, Mrs. Sherrod has no relationship with the parties that would counsel in any direction.  Thus, the District of Columbia has the most significant relationship with Plaintiff's claims.

Moreover, "[i]t must be remembered . . . that a mere counting of contacts is not what is involved.  The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale."  *Washkoviak*, 900 A.2d at 181  (internal quotation marks and citations omitted).  And "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."  Restatement (Second) of Conflict of Laws § 145(2).  Here, the most important factor is "where the plaintiff has suffered the greatest injury by reason of his loss of reputation"—not where the publication was drafted or the defamatory conduct occurred.  *Id.* § 150, Comment *e*.  For the reasons discussed above, Plaintiff suffered the greatest injury in the District of Columbia.  Accordingly, the qualitative weight of the factors favors the District of Columbia.[3]

---

[3]    Of course, "[e]ven if the balance of factors were uncertain, . . . D.C. choice-of-law rules require, in a case where the factors do not point to a clear answer, that [courts] apply D.C. tort law, the law of the forum state."  *Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014).

II.    **District of Columbia Law Applies to the Companies' Privilege Assertions.**

Like Plaintiff's substantive claims, District of Columbia law governs the Companies' privilege assertions.  Indeed, District of Columbia law is the default unless the Companies show (1) that there is a true conflict between District of Columbia and California privilege law as they apply to each communication, (2) that California has the most significant relationship with each communication, and (3) that there is a "special reason" to apply California privilege law to each communication.  In its July 24, 2014 submission, the Companies' argue only that California has the most significant relationship with the Solov Communications.  The Companies have flatly refused to identify which documents, if any, are supposedly privileged in California but not in the District of Columbia.

The District of Columbia Court of Appeals has not considered what choice-of-law rule to apply to allegedly privileged communications, but federal courts in this district agree that the District of Columbia Court of Appeals would likely follow the approach of the Restatement (Second) of Conflict of Laws § 139 in deciding what privilege law applies.  *See Kuhn & Kogan, Chtd. v. Jeffrey C. Mensh & Assocs., Inc.*, 77 F. Supp. 2d 52, 55 (D.D.C. 1999) (applying Restatement (Second) Conflict of Law § 139(2) because "D.C. has adopted other sections of the Restatement in the choice-of-law area"); *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 292, 295 (D.D.C. 1987).  Restatement (Second) of Conflict of Laws says of "Privileged Communications" that:

> (1) Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.
>
> (2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under

the local law of the forum will be admitted unless there is some special reason
why the forum policy favoring admission should not be given effect.

Restatement (Second) of Conflict of Laws § 139.  Accordingly, even if California did have the

most significant relationship with the communications at issue, documents that are privileged

under California law but not District of Columbia law **will be admitted** unless there is some

special reason why District policy should not be given effect.

Of course, "[t]hese provisions presuppose a conflict between the law of the forum state

and the law of the state with the most significant relationship."  *In re Teleglobe Commc'ns

Corp.*, 493 F.3d 345, 358 (3d Cir. 2007).  Accordingly, before wading into a choice-of-law

analysis, this Court should determine first whether there is a *true* conflict between California and

District of Columbia privilege law.  *Id.*  A true conflict exists where the laws are different *and

would produce different "result[s] when applied to the facts at issue."  See Long v. Sears

Roebuck & Co.*, 877 F. Supp. 8, 11 (D.D.C. 1995) (emphasis added); *see also Barimany v.

Urban Pace LLC*, 73 A.3d 964, 967 (D.C. 2013).  That is to say that it is not enough to show

simply that the laws generally differ if the outcome would be the same regardless of what law is

applied.  *See Rawat v. Navistar Int'l Corp.*, 08 C 4305, 2010 WL 1417840 (N.D. Ill. Apr. 7,

2010).  This is because "[w]hether a conflict exists and, if so, what law applies, is a *precise*

inquiry."  *Barimany*, 73 A.3d at 967 (emphasis added).  As such, "choice of law analyses . . .

should be considered issue by issue," *id.*, and on as fine a basis as necessary to examine the

"[various state] interests regarding the various distinct issues to be adjudicated," *Estrada v.

Potomac Elec. Power Co.*, 488 A.2d 1359, 1361 (D.C. 1985); *see also Long*, 877 F. Supp. at 11

("Under proper conflict of laws principles, the Court is to conduct the choice of law analysis for each distinct issue being adjudicated.").[4]

To date, the Companies have failed to establish that the documents they are withholding would be privileged under California law but not privileged under District of Columbia law. Indeed, as Plaintiff argued in her July 24, 2014 submission, based on the record before the Court, there is ample reason to believe that the Companies are withholding documents that are not privileged under either California law or District of Columbia law. *See* Dkt. No. 147 at 3-4. Only after the Companies establish that certain communications are privileged under California law *but not* privileged under District of Columbia law, should the Court engage in a choice-of law-analysis.

Assuming that the Companies are able to establish that there is a true conflict, California privilege law will not protect the documents from disclosure "unless there is some special reason why the forum policy favoring admission should not be given effect." Restatement (Second) Conflict of Laws § 139(2). That the communications would be privileged under the foreign law but not under the forum state's law is not a "special reason." *See In re Teleglobe Commc'ns Corp.*, 392 B.R. 561, 596 (Bankr. D. Del. 2008). Instead, the party seeking to apply the foreign law must establish that the "local policy favoring admission of the evidence is outweighed by countervailing considerations." Restatement (Second) of Conflict of Laws § 139, Comment *d*. In determining whether to apply the foreign privilege law, courts consider the following factors: "(1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved, (2) the relative materiality of the evidence that is sought to be

---

[4]   In line with this principle, courts are "not bound to decide all issues under the law of a single jurisdiction; choice of law involves examination of the various jurisdictional interests as applied to the various distinct issues to be adjudicated." *Coleman*, 667 A.2d at 816; *see also Indep. Petrochemical Corp.*, 674 F. Supp. at 356–57.

excluded, (3) the kind of privilege involved and (4) fairness to the parties." *Id.*; *see also Allianz Ins. Co. v. Guidant Corp.*, 869 N.E.2d 1042, 1058 (Ill. App. Ct. 2007) (considering the four factors and concluding that there is not a "special reason" for overriding the forum state's policy favoring the admission of such evidence); *People v. Allen*, 784 N.E.2d 393, 395–96 (Ill. App. Ct. 2003) (same); *Kos v. State*, 15 S.W.3d 633, 638 (Tex. App. 2000) (same).

Here, all four factors weigh in favor of applying District of Columbia privilege law. First, the number and nature of the parties' contacts with the District of Columbia are significant. As noted above, the greatest injury to Plaintiff's reputation occurred in the District of Columbia. Plaintiff's direct supervisors at USDA were in the District of Columbia and she continuously communicated with those individuals in the District of Columbia before they demanded her resignation. As such, this factor weighs in favor of applying District of Columbia privilege law. *See* Restatement (Second) of Conflict of Laws § 139, Comment *d* (noting that forum will be more reluctant to apply foreign privilege when contacts with forum are "numerous and important").[5]

Second, the Companies are withholding numerous communications that are highly relevant, including communications between Defendant O'Connor, Andrew Breitbart, and their colleagues in the days after the Blog Post was published on July 19, 2010. These communications, when considered in light of Plaintiff's claims against Defendants, are obviously

---

[5]   In the Companies' July 24, 2014 Memorandum Regarding Applicable Privilege Law, the Companies argued that California law should be applied, in part, because "[a]ll of the [Solov] communications occurred in California, were stored on California servers, and were preserved based on a litigation hold in California." Dkt. No. 146.   However, whether California or the District of Columbia has a greater relationship with the *communications* is irrelevant to this analysis.   Instead, the Court should focus only on the District of Columbia's relationship to the *parties* and the *transactions*.   *See Allianz Ins. Co.*, 373 Ill. App. 3d at 670 ("At this stage of the analysis, however, the number and nature of the contacts that the forum state has with the *communications* are of no moment. Comment *d* to section 139 instructs us to look at the number and nature of the contacts that the forum state has with the *parties* and with the *transaction* involved.").

relevant here, as they are evidence of the Defendants' conduct and state of mind in connection with the Blog Post.

The third factor, the kind of privilege involved, also weighs in favor of applying District of Columbia law. This factor requires courts to "examine whether the privileges involved are well established." *Allianz Ins. Co.*, 373 Ill. App. 3d at 671. The scope of the attorney-client privilege may vary from state to state. *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 647 (Tex. 1995). As applied to the facts at issue, this analysis assumes that the Solov Communications are privileged under California law but not under District of Columbia law. Thus, the communications must invoke a privilege that California law recognizes but that is not recognized under District of Columbia law. Unfortunately, Plaintiff is unable to address this point with specificity because, despite repeated requests, the Companies have refused to identify which documents are supposedly privileged under California law but not privileged under District of Columbia law and for what reasons. *See* July 28, 2014 Hearing Tr. 18:11-21.[6]

Of course, to the extent that the Companies are claiming that certain communications are privileged simply because, as Mr. Solov stated in his declaration, that he "instructed Mr. Breitbart and employees of Breitbart to make sure to copy [him] on every written communication concerning Mrs. Sherrod and on any topic related to Mrs. Sherrod," Dkt. No. 146-1, ¶ 11, the District of Columbia does not recognize such a practice as producing a default

---

[6]   July 28, 2014 Hearing Tr. 18:11-21 ("We gave them a privilege log. That's what they are entitled to. And counsel now is going to get up here tell me this about the document, tell me that about the document, focus me in on which privilege applies. I will tell you that when your Honor and I begin to go through these documents regardless of what law applies, I will tell you anything you want to know about these documents; but with all due respect, I am not telling them anything other than what they have. They have a privilege log. That's what we are obligated to give them under the law, and that's what we have given them. So I strongly suggest to the Court that we go forward with that structure.").

privilege.[7]  Indeed, such a broad application of the attorney-client privilege appears to be in contravention of the District of Columbia's well-established principle that "'attorney-client privilege must be strictly confined within the narrowest possible limits consistent with the logic of its principle.'"  *In re Lindsey*, 158 F.3d 1263, 1272 (D.C. Cir. 1998) (internal quotation marks omitted) (quoting *In re Sealed Case,* 676 F.2d 793, 807 n. 44 (D.C. Cir. 1982)).  Thus, unless the Companies show that the District of Columbia and other jurisdictions apply an attorney-client privilege nearly as broad as California's privilege, this factor weighs in favor of applying District of Columbia law.  *See Allianz Ins. Co.*, 373 Ill. App. 3d at 672 (finding that this factor weighed against applying Illinois attorney-client privilege law because "the discovery-oriented scope of these privileges adopted by [the Illinois] supreme court . . . has not been widely followed in other jurisdictions").

Finally, the fourth factor that considers the fairness to the parties also weighs in favor of District of Columbia law.  Courts often apply foreign privilege law where there is some indication that "the privilege 'was probably relied upon by the parties.'"  Restatement (Second) of Conflict of Laws § 139, Comment *d* (1971).  But here, there is no indication that the Companies' relied on California's broad attorney-client privilege law when communicating with Mr. Solov.  Tellingly, the Companies first asserted privilege over the Solov Communications in February 2014.  However, they *never* mentioned California privilege law until the July 21, 2014 hearing—over five months after they first asserted that the Solov Communications were privileged.  Certainly, if the Companies relied on California privilege law in communicating with Mr. Solov one would expect for them to raise California's broad privilege as soon as it became

---

[7]  As this Court has acknowledged, simply copying Mr. Solov on a communication *does not* make the communication privileged even if California privilege law were to apply.  July 28, 2014 Hearing Tr. 5:3-11; *see also Montebellow Rose Co. v. Agricultural Labor Relations Bd.*, 119 Cal. App. 3d 1, 32 (Ct. App. 1981).

clear that it was an issue and not just moments before the Court was to begin reviewing the allegedly privileged documents.  Accordingly, there is no "special reason" to apply California law.

**III.    Even If California Privilege Law Applies, Evidence Suggests That the Withheld Documents Are Not Privileged.**

The Companies apparently insist that under California law, all of the remaining withheld Solov Communications are privileged under California's "dominant purpose" test.  Specifically, the Companies assert that any communication with Mr. Solov is privileged because the dominant purpose of Mr. Solov's relationship with the Companies was as an attorney.  Plaintiff continues to dispute the Companies' contention that Mr. Solov's dominant purpose was as an attorney and agrees with the Court's observation that Mr. Solov's declaration was "woefully inadequate" to determine the issue.  *See* July 28, 2014 Hearing Tr. at 4:22-5:2.  However, if the Court finds, after an evidentiary hearing on the matter, that the dominant purpose of Mr. Solov's relationship with the Companies was as an attorney, there is an important principle that must be borne in mind in applying California privilege law:  a finding that the dominant purpose of Mr. Solov's relationship with the Companies was that of attorney-client does not end the Court's inquiry as to whether the Solov Communications are privileged.  That is because California's dominant purpose test is a necessary but not sufficient element to find that a communication is privileged.  Indeed, California courts routinely distinguish "those situations where in-house counsel is acting in his legal capacity" from circumstances in which in-house counsel is acting in his business, non-legal capacity.  *See, e.g.*, *Chicago Title Ins. Co. v. Sup. Ct. of San Mateo Cnty.*, 174 Cal. App. 3d 1142, 1151 (Ct. App. 1985).  In a colloquy with Plaintiff's counsel at the July 28, 2014 hearing, this Court agreed that if it finds that the dominant purpose of Mr. Solov's relationship with the Companies was that of attorney-client, it "doesn't automatically mean . . . that every

single piece of paper that attorney received or sent is privileged," and the Court "still [has] to make a decision as to any given documents."  July 28, 2014 Hearing Tr. at 13:4-11.  Further, the Companies do not dispute this principle.  In fact, at the July 28, 2014 hearing, counsel for the Companies *implored* the court to begin reviewing the allegedly privileged communications document-by-document to determine whether they are privileged.  *See id.* at 8:20-25.

Where Mr. Solov has admitted in his declaration to this Court that he "instructed Mr. Breitbart and employees of Breitbart to make sure to copy [him] on every written communication concerning Mrs. Sherrod and on any topic related to Mrs. Sherrod," Dkt. No. 146-1, ¶ 11, Plaintiff finds it highly unlikely that each document in the large corpus of withheld documents remaining is privileged.  Under no state's law of which Plaintiff is aware is such a directive permitted to shield the discovery of communications.

## CONCLUSION

For the foregoing reasons, this Court should find that District of Columbia law applies to Plaintiff's tort claims and the Companies' privilege assertions and the Court should proceed with an *in camera* review of the allegedly privileged documents.

Dated: August 18, 2014                    Respectfully submitted,


                                          */s/ Alexander G. Stege*
                                          Thomas D. Yannucci, P.C. (D.C. Bar #358989)
                                          Michael D. Jones (D.C. Bar #417681)
                                          Beth A. Williams (D.C. Bar #502522)
                                          Peter A. Farrell (D.C. Bar #975579)
                                          Alexander G. Stege (D.C. Bar #1005824)
                                          Heather Bloom (D.C. Bar # 988511)
                                          Jonathan Ganter (D.C. Bar # 998378)
                                          KIRKLAND & ELLIS LLP
                                          655 Fifteenth Street, N.W.
                                          Washington, DC 20005
                                          Tel: (202) 879-5000
                                          Fax: (202) 879-5100
                                          thomas.yannucci@kirkland.com
                                          michael.jones@kirkland.com
                                          thomas.clare@kirkland.com
                                          beth.williams@kirkland.com
                                          peter.farrell@kirkland.com
                                          alexander.stege@kirkland.com
                                          hbloom@kirkland.com
                                          jonathan.ganter@kirkland.com

                                          Thomas A. Clare, P.C. (D.C. Bar #461964)
                                          CLARE LOCKE LLP
                                          902 Prince Street
                                          Alexandria, VA 22314
                                          Tel: (202) 628-7400
                                          tom@clarelocke.com

                                          *Attorneys for Plaintiff*

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Plaintiff Shirley Sherrod's Submission Regarding the Law Applicable to the Tort Claims and the Breitbart Companies' Privilege Assertions was filed electronically on this 18th day of August, 2014.  Notice of this filing will be sent to, and can be accessed by, all parties via the Court's electronic filing system, except for:

> Harrison J. Dossick
> REED SMITH LLP
> 1901 Avenue of the Stars, Suite 700
> Los Angeles, CA 90067
> (310) 734-5235
>
> *Attorney For Defendant Susannah Breitbart, As Successor To Andrew Breitbart, Deceased*

who is being served via overnight Federal Express.

*/s/ Alexander G. Stege*